# IN THE SUPREME COURT OF TEXAS

═══════════
No. 12-1000
═══════════

IN RE FORD MOTOR COMPANY AND KEN STOEPEL FORD, INC., RELATORS

═══════════════════════════════
ON PETITION FOR WRIT OF MANDAMUS
═══════════════════════════════

**PER CURIAM**

In this design-defect case, the plaintiff sought to expose potential bias of the defendant's two testifying experts by inquiring at their depositions into the frequency with which they testified in favor of design-defect defendants. To further explore bias, the plaintiff now seeks to depose a corporate representative of each expert's employer. We hold that on the facts of this case, the Rules of Civil Procedure do not permit such discovery and we conditionally grant mandamus relief.

This suit arises from injuries plaintiff Saul Morales sustained after a Ford vehicle ran over him. Morales had been in his own vehicle, fleeing police who suspected he was driving drunk. Eventually, Morales stopped his vehicle and continued his flight on foot. One of the police officers likewise left his 2004 Ford Crown Victoria Police Interceptor, then pursued and apprehended Morales. While the officer attempted to handcuff Morales, the officer's vehicle began rolling backward toward the pair. The vehicle struck the officer, then ran over and came to rest on top of Morales, injuring him.

Morales sued Ford Motor Company, which designed and manufactured the police car, and the car's seller, Ken Stoepel Ford, Inc. (collectively "Ford"). In his action, Morales alleged the vehicle had a design defect that allowed the officer unintentionally to place the gear-shift selector between park and reverse, which then caused the vehicle to go into an idle-powered reverse.

To defend the lawsuit, Ford retained two expert witnesses: Erin Harley, of Exponent, Inc., and Hugh Mauldin, of Carr Engineering, Inc. After deposing both Harley and Mauldin, Morales sought corporate-representative depositions from Exponent and Carr Engineering on seventeen topics, arguing the additional depositions were necessary to prove each testifying expert's bias in favor of Ford and other automobile manufacturers.

The Rules of Civil Procedure define the scope and methods of discovery about expert witnesses. Rule 192.3(e) sets forth the scope of information that parties may discover about a testifying expert, which includes "any bias of the witness." TEX. R. CIV. P. 192.3(e). Rule 195 addresses the methods for obtaining such information, limiting testifying-expert discovery to that acquired through disclosures, expert reports, and oral depositions of expert witnesses. TEX. R. CIV. P. 195.

The official comments to Rule 195 articulate a goal of minimizing "undue expense" in conducting expert discovery. TEX R. CIV. P. 195 cmt. 3. This goal comports with efforts by this Court and others to curb discovery abuse through the implementation of carefully crafted principles and procedures. *See In re Alford Chevrolet-Geo*, 997 S.W.2d 173, 180–81 (Tex. 1999) (orig. proceeding). We have expressed concerns about allowing overly expansive discovery about testifying experts that can "permit witnesses to be subjected to harassment and might well

2

discourage reputable experts" from participating in the litigation process. *Ex parte Shepperd*, 513 S.W.2d 813, 816 (Tex. 1974) (orig. proceeding).

The particular deposition notices in this case highlight the danger of permitting such expansive discovery. In his deposition notices to Carr Engineering and Exponent, Morales seeks detailed financial and business information for all cases the companies have handled for Ford or any other automobile manufacturer from 2000 to 2011. Such a fishing expedition, seeking sensitive information covering twelve years, is just the type of overbroad discovery the rules are intended to prevent. *See Alford Chevrolet-Geo*, 997 S.W.2d at 180 (rules of procedure are designed to curb abusive discovery tactics, which some litigants employ simply to increase litigation costs for their adversaries); *see also Russell v. Young*, 452 S.W.2d 434, 437 (Tex. 1970) (orig. proceeding) (denying discovery of financial records from a potential medical expert witness because "[t]here is . . . a limit beyond which pre-trial discovery should not be allowed").

By holding that the requested discovery is impermissible in this case, we do not unduly inhibit discovery of an expert's potential bias. Courts have recognized that discovery into the extent of an expert's bias is not without limits. *See, e.g.*, *In re Weir*, 166 S.W.3d 861, 865 (Tex. App.—Beaumont 2005, orig. proceeding) (per curiam) (holding expert witness did not have to testify about personal financial information because there was other evidence of bias); *Olinger v. Curry*, 926 S.W.2d 832, 834–35 (Tex. App.—Fort Worth 1996, orig. proceeding) (holding the trial court abused its discretion in ordering the production of the expert's tax returns because the expert witness had already admitted 90% of his services were provided to defendants in litigation).

Indeed, the most probative information regarding the bias of a testifying expert comes from the expert herself. In this case, for example, Harley testified that only 5% of the cases she handles are for plaintiffs and that she has never testified against an automobile manufacturer. Similarly, Mauldin testified that historically about 50% of Carr Engineering's work is done for Ford. Moreover, Mauldin admitted that in park-to-reverse cases, he has never testified that a vehicle has a design defect. Mauldin's deposition in this case also revealed that he worked at Ford for several years before becoming a consultant at Carr Engineering.

Morales argues that we have recognized at least one instance in which deposing the expert's employer was justified. In *Walker v. Packer*, we held that discovery beyond the individual expert's deposition might be permissible when extrinsic evidence, discovered after the expert's deposition, puts his credibility in doubt. 827 S.W.2d 833, 838–39 (Tex. 1992) (orig. proceeding). In that case, the expert witness, a physician, testified in his deposition that his employer had no policy restricting its doctors from testifying for plaintiffs in medical-malpractice cases. *Id*. at 837. When the deposing party discovered contrary evidence in an unrelated case, we held that deposing an employer's representative was appropriate to "narrowly seek information regarding the potential bias." *Id*. at 838.

We adopted Rule 195—establishing disclosures, expert reports, and oral depositions as the permissible methods for expert discovery—after we decided *Walker*. *See* TEX. R. CIV. P. 195. Assuming that this aspect of our holding in *Walker* survived the adoption of Rule 195, we disagree that *Walker* compels the result Morales seeks. Unlike *Walker*, neither expert's credibility has been

4

impugned in this case. And Morales has not demonstrated any other circumstance to warrant deposing the witnesses' employers' corporate representatives.

Therefore, pursuant to Rule 52.8(c) of the Rules of Appellate Procedure, we conditionally grant Ford's petition for writ of mandamus without hearing oral argument and direct the trial court to vacate its discovery order. As we are confident that the trial court will comply, the writ will issue only if the trial court fails to do so.

OPINION DELIVERED: March 28, 2014

5