**Conditionally GRANT; and Opinion Filed April 10, 2014.**



**In The**

# Court of Appeals
# Fifth District of Texas at Dallas

**No. 05-14-00178-CV**

## IN RE CENTRAL NORTH CONSTRUCTION, LLC, Relator

**Original Proceeding from the 95th Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. DC-12-03754**

# MEMORANDUM OPINION
Before Justices O'Neill, Lang, and Brown
Opinion by Justice Brown

Relators filed this mandamus proceeding after the trial court ordered Central North Construction, LLC (Central North) to produce certain information concerning the revenues of non-party Biodynamic Research Corporation (BRC). We conclude the trial court abused its discretion and relators have no adequate remedy by appeal. We therefore conditionally grant the writ of mandamus.

## I. FACTUAL AND PROCEDURAL CONTEXT

This is a personal injury case brought by Frederick Currey, Jr. arising from a collision involving the vehicle he was driving and a pickup truck owned by Central North. Currey alleges he was injured when the vehicle owned by Central North failed to slow or stop and struck the rear of Currey's vehicle at a high rate of speed. Central North retained Joseph Cormier, Ph.D., P.E. as a testifying expert to provide testimony that Currey's injuries are not supported by the evidence of impact to Currey's vehicle. Cormier is an employee of BRC. BRC is a

biomechanical analysis and accident reconstruction firm that supplies experts for a variety of purposes, including as expert witnesses in litigation.

BRC testifies almost exclusively for insurance companies, their policy holders, and the manufacturers of vehicles. Both Central North and BRC admit that 90% of the revenues from BRC's forensic consulting services are derived from the defense side of the docket. By affidavit the BRC custodian of records testified that 95% of BRC's revenues over the preceding five years were derived from forensic consulting services and less than 5% of its revenues for the same period were derived from externally funded research and other sources. Additionally BRC's records custodian testified that at least 90% of its forensic consulting service revenues on litigated matters for the preceding five years derived from payments from defendants, namely insurance companies, their policy holders, manufacturers and their counsel and that less than 10% of BRC's forensic consulting services revenues on litigated matters for the past five years derived from plaintiffs and their counsel.

In an effort to prove that Cormier was biased due to his financial self-interest in the case, Currey sought to obtain financial and accounting information concerning BRC's relationship with insurance companies, their policy holders, manufacturers of vehicles, and the attorneys that represent such parties in litigation via deposition on written question. Both Central North and BRC objected. The trial court concluded that the information sought was relevant and discoverable, but Currey's requests were overly broad, unduly burdensome or otherwise improper. The trial court further concluded, however, that because BRC's livelihood depends on the rendition of opinions for litigants or potential litigants almost exclusively on one side of the docket, Currey should be allowed to obtain some discovery concerning BRC's revenues to allow Currey to bring home to the judge and jury in concrete terms the extent of the relationship and interest present.

Thus, the trial court ordered Central North to disclose to Currey the dollar amount of gross revenues received by BRC from insurance companies, their policy holders, manufacturers and their attorneys, separately for the years 2009 through 2013 and to disclose to Currey for the same time period the dollar amount of gross revenues received by BRC from each insurance company, policy holder or their counsel involved in this case. This order granted discovery substantially narrower in scope than that originally sought by Currey from BRC. Central North filed this petition for writ of mandamus seeking relief from the trial court's order.

## II. STANDARD FOR MANDAMUS RELIEF

To obtain mandamus relief, relator must show both that the trial court has abused its discretion and that it has no adequate appellate remedy. *In re Prudential Ins. Co.*, 148 S.W.3d 124, 135-36 (Tex. 2004) (orig. proceeding); *Walker v. Packer*, 827 S.W.2d 833, 839-40 (Tex. 1992) (orig. proceeding). The scope of discovery is within a trial court's discretion and a trial court abuses that discretion only if it orders discovery that exceeds the discovery that the Texas Rules of Civil Procedure permit. *In re CSX Corp.*, 124 S.W.3d 149, 152 (Tex. 2003). The reviewing court may not substitute its judgment for that of the trial court and the relators must establish that the trial court could reasonably have reached only one decision. *Walker v. Packer*, 827 S.W.2d 833, 839–40 (Tex. 1992). "Even if the reviewing court would have decided the issue differently, it cannot disturb the trial court's decision unless it is shown to be arbitrary and unreasonable." *Id*. at 840.

## III. DISCOVERABILITY OF FINANCIAL RECORDS TO ESTABLISH BIAS

The trial court based its order on the conclusion that "There is hardly a better way to establish bias in an adversarial proceeding than to show that a witness's financial well-being is fastened tightly to his testimony." Noting that BRC through Cormier had a financial interest in providing testimony because it would be compensated for that testimony, the trial court

concluded that "it is hard to discern how the interest of a witness, whether financial or personal, could ever be irrelevant or otherwise not subject to meaningful discovery."

The Texas Rules of Civil Procedure set forth the scope and procedures for discovery concerning expert witnesses, including discovery into "any bias of the witness." TEX. R. CIV. P. 192.3(e). Rule 195.1 provides that expert witness discovery may be obtained only through disclosures, expert reports and oral depositions of expert witnesses. TEX. R. CIV. P. 195.1. The goal of Rule 195 is to minimize "undue expense" in conducting discovery, which comports with efforts by the Texas Supreme Court and others "to curb discovery abuse through the implementation of carefully crafted principles and procedures." *In re Ford Motor Co.*, 57 Tex. Sup. Ct. J. 415, 416, 2014 WL 1258265 (Tex. Mar. 28, 2014) (orig. proceeding) (per curiam).

The discovery rules regarding expert witness should be interpreted in a manner such as to "provide access to material information" while also "preserving litigation as a viable, affordable, and expeditious dispute resolution mechanism." *In re Weir,* 166 S.W.3d 861, 863 (Tex. App.—Beaumont 2005, orig. proceeding). The Texas Supreme Court has recently commented on the "danger of permitting expansive discovery" of potential financial bias of an expert witness. *See Ford Motor Co.*, 57 Tex. Sup. Ct. J. at 416 (directing trial court to vacate order seeking financial and business information for all the cases the employer of the expert witness had handled for Ford during a twelve year period). Allowing overly expansive discovery about testifying experts can "permit witnesses to be subjected to harassment and might well discourage reputable experts" from participating in the litigation process. *Ford Motor Co.,* 57 Tex. Sup. Ct. J. at 416 (quoting *Ex parte Shepperd*, 513 S.W.2d 813, 816 (Tex. 1974) (orig. proceeding)).

Generally, although an expert witness may be questioned regarding payment received for his work as an expert witness, pre-trial discovery sought only to establish financial interest for impeachment purposes is not allowed. *Russell v. Young*, 452 S.W.2d 434, 436–37 (Tex. 1970). As the Texas Supreme Court has noted, the most probative information regarding the bias of a

testifying expert comes from the expert himself. *Ford Motor Co.*, 57 Tex. Sup. Ct. J. at 417 (expert testified that only 5% of cases she handles are for plaintiffs and she had never testified against an automobile manufacturer; second expert testified that about 50% of his employer's work was done for Ford, he had previously been employed by Ford and he had never testified that a vehicle had a design defect in the type of case at issue). Thus, a party's interest in obtaining discovery solely for impeachment must be weighed against the legitimate interest of the witness in protecting unrelated financial information. *In re Weir*, 166 S.W.3d at 865 (concluding expert could be required to provide an estimate of the percentage of his income that was derived from litigation if the expert knew the percentage, but that the expert "should not be required to do what the Supreme Court held the defendant could not do itself in *Russell*: review all the expert's unrelated financial records solely to obtain possible impeachment evidence.")

Where there is other extrinsic evidence of bias discovered after the expert's deposition that puts the expert's credibility in doubt, discovery beyond the expert's deposition might be permissible. *Ford Motor Co.*, 57 Tex. Sup. Ct. J. at 417 (discussing *Walker v. Packer,* 827 S.W.2d 833, 839 (Tex. 1992) and questioning whether its holding regarding discovery of expert's employer survived the adoption of Rule 195). In *Walker,* the Supreme Court approved discovery directed to the expert's employer when extrinsic evidence showed that the expert's employer had a policy that prohibited employees from testifying on behalf of plaintiffs.

Real party contends that, as in *Walker,* it has shown other evidence of bias in this case. Currey argues that bias is established in this case by the fact that the expert will be presenting expert testimony to refute his allegations. If such a fact were relevant to establishing bias, then discovery of financial data for purposes of impeachment would be available in any case in which a testifying expert is retained by one of the parties to refute the evidence of the other party.

Currey also points out that BRC has been characterized as "symbiotically connected" to an insurance company (State Farm) by at least one court. *Brown v. Dobbs*, 691 N.E.2d 907, 909

(Ind. Ct. App. 1998). There was no such finding in this case.[1] Moreover, that case, decided under Indiana law, did not involve discovery concerning the finances of BRC, but rather whether BRC should be compelled to provide the plaintiff a copy of the test data that supported the testimony the BRC expert would give without requiring the plaintiff to pay BRC for the cost of its testing. *See id.* Assuming, without deciding, that *Walker* still provides authority for any additional expert discovery beyond that expressly allowed by Rule 195, real party has not provided evidence in this case sufficient to justify discovery of the finances of BRC. The trial court abused its discretion in permitting discovery for impeachment purposes beyond that permitted by Rule 195 of the Texas Rules of Civil Procedure.

## IV. CONCLUSION

Because the trial court clearly abused its discretion in ordering the disclosure of BRC's financial information by Central North , we **CONDITIONALLY GRANT** relators' petition for writ of mandamus. A writ will issue only in the event the trial court fails to vacate its February 7th, 2014 order requiring that Central North disclose to Currey the dollar amount of gross revenues received by BRC from insurance companies, their policy holders, manufacturers and their attorneys, separately for the years 2009 through 2013 and to disclose to Currey for the same time period the dollar amount of gross revenues received by BRC from each insurance company, policy holder or their counsel involved in this case.


/Ada Brown/
ADA BROWN
JUSTICE

140178F.P05

---

[1] The trial court found, "BRC is not what is typically viewed as a non-party witness: BRC is Central North's retained expert. Moreover, BRC is an expert witness and opinion company whose primary mission, like that of other members of the expert witness industry, is to provide expert opinions."