

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
### FORT WORTH

### NO. 02-14-00349-CV

---

IN RE RAMIN SIROOSIAN,                                            RELATORS
CHIROPRACTIC DOCTORS
CLINIC, AND TINA YESHIGETA

----------

ORIGINAL PROCEEDING
TRIAL COURT NO. CV-2013-01306

----------

## OPINION

----------

## I. INTRODUCTION

This original proceeding arises from a car wreck case.  Respondent, the

Honorable Robert Ramirez, issued an order compelling Relator Ramin Siroosian,

one of the plaintiff's treating, non-retained, non-testifying[1] chiropractic doctors, to

---

[1]Although Siroosian was initially designated as an expert on causation, the plaintiff subsequently timely filed an affidavit concerning cost and necessity of services pursuant to civil practice and remedies code section 18.001, de-

answer deposition questions about software utilized by and collections, revenues, and billings of Relator Chiropractic Doctor's Clinic (CDC) and compelling Siroosian to answer a question about political contributions he has made. Relators[2] filed this original proceeding seeking a writ of mandamus requiring Respondent to withdraw his order directing Siroosian to answer these questions.[3] For the reasons set forth below, we will conditionally grant the writ.

## II. PROCEDURAL AND FACTUAL BACKGROUND

Siroosian is a principal in CDC and treated the plaintiff in this case at CDC. At his deposition, per his counsel's instruction, Siroosian refused to answer certain questions. Claiming a desire to expose potential bias of Siroosian and to ascertain the "basis of his opinions," the defendant and Real Party in Interest, Jennifer Mazurek, filed a motion to compel Siroosian and Yeshigeta to answer

designated Siroosian as a causation expert, and stated on the record at the motion to compel hearing that Siroosian would not be called to testify at trial. *See* Tex. Civ. Prac. & Rem. Code Ann. § 18.001 (West Supp. 2014). No controverting section 18.001 counteraffidavit was served, but defense counsel stated on the record at the motion to compel hearing that he intended to subpoena Siroosian to testify at trial.

[2]Relator Tina Yeshigeta is the Director of Operations for several clinics in which Siroosian is a principal, including CDC. Although she is identified in the petition for writ of mandamus as a Relator, the trial court did not order her to answer any questions.

[3]Relators also filed a motion for temporary emergency stay, requesting this court to stay Siroosian's deposition, which was scheduled for November 5, 2014. In an order dated November 3, 2014, we granted Relators' motion for temporary emergency stay.

certain deposition questions. Following a nonevidentiary hearing, Respondent issued an order compelling Siroosian to answer the questions.

Respondent's order provides that "[t]he Court instructs Dr. Siroosian to answer the following questions" and authorizes "follow-up questions" on these topics:

a. Whether there is an accounts receivable report or some sort of report in June of 2012 that would have shown how much was owed by each patient?

    i.    This question is not seeking patient names.

b. Is there a report or a document that shows letters of protection accounts that went into collection in 2012 for Chiropractic Doctors Clinic?

    i.    This question is not seeking patient names.

c. Can you think of a patient who went into collection under a letter of protection for whatever reason that didn't get a recovery?

    i.    This question is not seeking patient names.

d. Have you ever contributed to any campaign to Domingo Garcia the Plaintiff's lawyer?

e. Did Chiropractic Doctors Clinic have the ability in 2012 to generate, and does it possess, a revenue report for each patient?

f. What is the identity of the software used to create the revenue reports for Chiropractic Doctors Clinic?

g. What is the dollar amount of collections efforts in 2012 by Chiropractic Doctors Clinic for patient bills after a letter of protection was provided to Dr. Siroosian and/or Chiropractic Doctors Clinic?

3

h.  What is the impact of the letter of protection provided to Dr. Siroosian and/or Chiropractic Doctors Clinic by Plaintiff's counsel for this matter?

i.  What is the identity of any individuals who worked for Chiropractic Doctors Clinic that would be better suited than Dr. Siroosian to answer questions about the collection efforts of Chiropractic Doctors Clinic for patient bills after a letter of protection was provided?

Relators claim that Respondent abused his discretion by issuing this order because the questions posed do not seek information relevant to any issue in this car wreck case and because the questions posed above either have been answered,[4] are not calculated to expose any bias of Siroosian, or impermissibly violate Siroosian's privacy rights as a treating, non-retained expert.

---

[4]For example, concerning question h above, Siroosian testified as follows in his deposition:

Q.  [By Mazurek's counsel]:  What is your understanding of how letters of protection work, as the clinical director for CDC in 2012?

A.  [By Siroosian]:  Okay.  A letter of protection states that there is an attorney that is representing that client, pretty much.  That's what it's telling us.

Q.  Very good.  Other than telling you that the client is represented by an attorney, what else does that letter of protection mean to you?

A.  It also means that there is going to be a legal battle in order to find out who is really responsible for injuring that patient.  So because that person did not pay for the injuries that were incurred upon that patient, there is this battle, unfortunately.  So during this time that things are going to be found out, there is no funds for the patient to pay, so we accept that letter from that legal entity that, "Okay, we will wait.  We will render our services as a courtesy to the patient, and we will wait until this legal battle of who is really responsible for the patient's injuries" – "until that is identified."

4

### III. THE PERMISSIBLE SCOPE OF DISCOVERY FROM AN EXPERT WITNESS

The rules of civil procedure define the scope and methods of discovery about expert witnesses. *See* Tex. R. Civ. P. 192.3(e); *see also In re Ford Motor Co.*, 427 S.W.3d 396, 397 (Tex. 2014) (orig. proceeding). The scope of information that a party may discover about testifying expert witnesses includes facts known by the expert forming the basis of his mental impressions and opinions, the expert's mental impressions formed in connection with the case and the methods used to derive them, and "any bias of the witness." Tex. R. Civ. P. 192.3(e). It is not a ground for objection "that the information sought will be inadmissible at trial if the information sought appears reasonably calculated to lead to the discovery of admissible evidence." Tex. R. Civ. P. 192.3(a); *In re Nat'l Lloyds Ins. Co.*, No. 13-0761, 2014 WL 5785871, at *1–2 (Tex. Oct. 31, 2014) (orig. proceeding).

However, even these liberal discovery parameters have limits, and discovery requests must not be overbroad. *Nat'l Lloyds Ins. Co.*, 2014 WL 5785871, at *1–2. Overly broad and expansive discovery requests are particularly troublesome when directed at testifying expert witnesses because such discovery requests can "permit witnesses to be subjected to harassment and might well discourage reputable experts" from participating in the litigation

> However, the patient always remains the only responsible party to pay the bills. So we're just waiting, as a courtesy and as a respect, to see, okay, who is really responsible for these injures; and when that is determined, if that goes away, then the patient is still fully responsible for all of it.

process. *Ford Motor Co.*, 427 S.W.3d at 397. Overbroad requests for irrelevant information are improper whether they are burdensome or not. *Nat'l Lloyds Ins. Co.*, 2014 WL 5785871, at *1–2.

Bias, in its usual meaning, is an inclination toward one side of an issue rather than to the other. *See Compton v. Henrie*, 364 S.W.2d 179, 182 (Tex. 1963). Proof of bias on the part of an expert witness may be offered to impeach the expert's credibility. Tex. R. Evid. 613(b). The parties' interest in obtaining discovery solely for the purpose of impeachment must be weighed against the witness's legitimate interest in protecting unrelated financial information. *In re Weir*, 166 S.W.3d 861, 865 (Tex. App.—Beaumont 2005, orig. proceeding). Thus, for example, to show bias in a case involving an alleged automobile design defect, the defendant Ford Motor Company's two retained, testifying experts could be questioned about the percentage of cases in which they had testified for a plaintiff and about the percentage of the total expert testimony that they had provided that was for Ford Motor Company. *Ford Motor Co.*, 427 S.W.3d at 398.[5] These questions could show the experts' potential bias in favor of Ford Motor Company in that case on the issue of whether a design defect existed. *Id.*

---

[5] *Accord Russell v. Young*, 452 S.W.2d 434, 436 (Tex. 1970) (recognizing general proposition that in order to show bias, "an expert medical witness may be cross-examined regarding the number of times he has testified in lawsuits, payments for such testifying[,] and related questions"); *Weir*, 166 S.W.3d at 865 (explaining that defendant's expert had already admitted he testified almost exclusively for defendants so that order compelling production of financial information documenting this statement constituted abuse of discretion).

6

#### IV.  THE INFORMATION SOUGHT IS NOT RELEVANT,
#### IS NOT CALCULATED TO EXPOSE BIAS, AND IMPERMISSIBLY VIOLATES SIROOSIAN'S
#### RIGHT TO PROTECT UNRELATED INFORMATION

The information Mazurek seeks to obtain by posing the above questions to Siroosian—plaintiff's treating, non-retained chiropractic doctor—is, as a matter of law, not relevant and is, as a matter of law, not calculated to reveal any bias by Siroosian toward one side of any issue in this car wreck case.  *See Compton*, 364 S.W.2d at 182 (defining bias in the context of juror bias).  Questions a, b, c, e, f, g, and h seek information about accounts receivable, collections under letters of protection, and revenue reports for patients other than the plaintiff here, as well as identification of the software utilized by CDC and Siroosian's thoughts on the impact of a letter of protection.  The supreme court recently held that this type of information was not discoverable—even from a party—because it was not relevant.  *See Nat'l Lloyds Ins. Co.*, 2014 WL 5785871, at *1–2 (explaining that, in a suit based on an allegedly underpaid home insurance claim, discovery requests—seeking insurance claims filed by homeowners other than plaintiff based on the same two storms as plaintiff's homeowner's claims—sought information that was not relevant and was therefore overbroad).  We fail to see how accounts receivable reports showing amounts owed by each patient, collection efforts by Relators from patients on letters of protection, collection efforts by Relators from patients on letters of protection when the patient did not obtain a recovery, revenue reports concerning each patient, the total dollar

amount of collections under letters of protection, the software utilized by CDC, or Siroosian's thoughts on the impact of a letter of protection are probative of the plaintiff's injuries or the treatment of those injuries by Siroosian, CDC, or other chiropractic doctors at CDC. *See id.* at *2 ("[W]e fail to see how [the insurance company's] overpayment, underpayment, or proper payment of the claims of unrelated third parties is probative of its conduct with respect to [plaintiff's] undervaluation claims at issue in this case."). Nor do questions a, b, c, e, f, g, or h seek to ascertain the facts known by Siroosian forming the basis of his mental impressions and opinions concerning the treatment of the plaintiff or her alleged injuries, or the methods used by Siroosian to derive his mental impressions. *See* Tex. R. Civ. P. 192.3(e).

Likewise, the information sought in questions a, b, c, e, f, g, and h is not calculated to reveal any bias by Siroosian toward one side of any issue in this car wreck case; while questions regarding the number of times Siroosian has testified in lawsuits, payments for any such testimony, and related questions may be proper, those are not the questions Mazurek obtained an order compelling Siroosian to answer. *See Russell*, 452 S.W.2d at 436 (outlining general areas of expert witness cross-examination in order to show bias). We hold that Respondent abused his discretion by ordering Siroosian to answer questions a, b, c, e, f, g, and h; because these questions seek information that is not relevant,

8

they are necessarily overbroad.[6]  *See, e.g.*, *Nat'l Lloyds Ins. Co.*, 2014 WL 5785871, at \*1–2; *Weir*, 166 S.W.3d at 865.  And to the extent these questions purport to seek information to expose some type of bias by Siroosian, Siroosian's legitimate interest in protecting CDC's financial information concerning its collection efforts, revenues, and software outweighs the possibility, if any exists, that some modicum of bias could be uncovered.  *See, e.g.*, *Olinger v. Curry*, 926 S.W.2d 832, 834–36 (Tex. App.—Fort Worth 1996, orig. proceeding).

Question d inquires whether Siroosian—a non-retained, non-testifying, treating expert—has ever made a campaign contribution to Domingo Garcia, the lawyer for the plaintiff in the car wreck case.  At the hearing on the motion to compel, Mazurek argued that this question was relevant, stating, "I think that's relevant given the fact that now I know that he has got at least three other cases with Mr. Garcia's office, if the deposition on written question is true, I don't know about that, but for this one, I think that's enough."  Again, while Mazurek may question Siroosian concerning his testimony in prior lawsuits—including concerning his testimony for Garcia's clients, concerning payments for any such testimony, and possibly concerning the percentages of his patients who are referred by Garcia, those are not the questions that Mazurek obtained an order compelling Siroosian to answer.  The right to participate in democracy through political contributions is protected by the First Amendment.  *McCutcheon v. Fed. Election Comm'n*, 134 S. Ct. 1434, 1441 (2014).  And to the extent that question

---

[6]Additionally, Siroosian has already answered at least question h.

9

d could conceivably purport to seek information to expose some type of bias by Siroosian, his legitimate First Amendment right to unfettered participation in the democratic process through political contributions outweighs the possibility, if any exists, that some modicum of bias could be uncovered through this question. *See, e.g.*, *Olinger*, 926 S.W.2d at 834–35.

Question i asks whether other individuals who worked for CDC might be better suited than Siroosian to answer the above questions. Because we have held that the above questions are improper as overbroad in that they seek information that is not relevant and also have held that Siroosian's privacy rights outweigh the remote possibility that the questions could lead to the discovery of some indication that Siroosian had some bias toward some issue in this case, we hold that question i has become immaterial. Because questions a through h are improper, as a matter of law Siroosian need not answer question i, identifying other people to answer the improper questions a through h.

Mazurek filed a 516-page response and appendix to Relator's petition for writ of mandamus. We have carefully reviewed both.[7] Mazurek's primary arguments focus on the lengthy and contentious sequence of events in the discovery process leading up to Respondent's issuance of the order in question compelling Siroosian to answer questions a through i. Mazurek raises and discusses numerous purported incidents of discovery misconduct by Siroosian.

---

[7]Also, Relators filed a reply to Mazurek's response, Mazurek filed a sur-reply to Relators' reply, and Relators filed a reply to Mazurek's sur-reply. We have carefully reviewed these as well.

10

But Mazurek cites no authority for the proposition that a trial court may compel non-relevant, overbroad discovery as a discovery sanction or compel a treating doctor whom the plaintiff does not intend to call to testify at trial to disclose private financial and business information as a discovery sanction. Thus, taking all of Mazurek's assertions of fact as true, Respondent nonetheless abused his discretion by issuing the order in question.

Mazurek also claims that the above questions are relevant to discovering the basis for Siroosian's medical opinions concerning the plaintiff. Such relevancy is not apparent to us; while the scope of discovery concerning Siroosian includes facts known by him forming the basis of his mental impressions and opinions and his mental impressions formed in connection with the case and the methods used to derive them, questions a through i seek information regarding CDC and its accounts receivable, collections under letters of protection, revenue reports for patients other than the plaintiff here, as well as identification of the software utilized by CDC and political contributions by Siroosian. Additionally, no argument is set forth either in the record of the motion to compel hearing or in Mazurek's response to Relators' petition for writ of mandamus connecting the relevancy dots between the above questions and any issue in this car wreck case or any purported bias of Siroosian.

The dissent would nonetheless hold that questions b, c, h, and i seek to obtain information concerning Siroosian's or CDC's "bias with respect to billing

11

practices." Evidence of an expert's bias may be offered to impeach the expert's credibility. Tex. R. Evid. 613(b). Even assuming that, somehow, as a treating, non-retained, non-testifying doctor Siroosian's credibility is at issue so that he and his clinic may be subjected to discovery for the sole purpose of obtaining purported credibility-impeachment evidence, we still fail to see how the information sought in questions b, c, h, and i (or in any of the other questions) concerning Siroosian's or CDC's billings of or collections from unrelated third-party patients are probative of any purported "billing bias" in the present case. *See Nat'l Lloyds Ins. Co.*, 2014 WL 5785871, at *1–2. And neither Mazurek nor the dissent articulate what bias of Siroosian is purportedly reflected in his bill to the plaintiff that will be uncovered by the information sought in questions b, c, h, and i. Siroosian's bill is reasonable, or it is not; it is for medical treatment that was necessary or that was not necessary. Procedures exist for Mazurek to challenge the reasonableness of the amount Siroosian billed the plaintiff and to challenge whether the treatments that Siroosian provided to the plaintiff were necessary. *See* Tex. Civ. Prac. & Rem. Code Ann. §18.001(e)[8] (setting forth procedure for filing counteraffidavit concerning cost and necessity of services); *see also Horton v. Denny's Inc*., 128 S.W.3d 256, 259 (Tex. App.—Tyler 2003, pet. denied) (involving cross-examination of treating doctor at trial concerning reasonableness and necessity of medical expenses). Attempting to discover

_____

[8]As mentioned above, it is undisputed here that Mazurek did not timely file a controverting section 18.001 affidavit.

12

purported credibility-impeachment evidence from a treating, non-retained, non-testifying medical expert concerning private financial billings and collections of his clinic from other patients (although omitting patient names) by asserting "billing bias" is not one of them.[9]

---

[9]Mazurek's sur-reply brief, cited by the dissent in footnote 3, actually states:

> The nine cross-examination questions the trial court ordered are, in part, aimed at determining "whether or not the medical treatments received by Plaintiff were reasonable and necessary." Should answers to those questions reveal that Dr. Siroosian does not actually look to the Plaintiff for payment of her medical bills *(a question Dr. Siroosian refused to answer)*, Defendant will seek leave of the trial court to file a controverting affidavit under Section 18.001(e)(2). *(Rec. Tab 2, p.49, lines 10-17)*. [Emphasis added.]

But the question asked during Siroosian's deposition at Record Tab 2, page 49, lines 10-17 is ultimately answered as shown below:

> Q. [By Mazurek's counsel]: Let's say you've got a case with a letter of protection and there's no recovery, for whatever reason. You follow me?
>
> A. Yes, sir.
>
> Q. Okay. Tell me the steps that you-all take to collect your money.
>
> [Objections omitted.]
>
> A. **In Ms. Briones' [the plaintiff's] case**—
>
> Q. Okay, I'm sorry—
>
> A. **—if there's no recovery—because I will talk about only Ms. Briones' case—she will go to collection.**

13

We hold that Respondent abused his discretion by ordering Siroosian to answer questions a through i because the order compels discovery beyond that authorized by the rules of civil procedure and because Siroosian had already answered at least one of the questions, in any event. *See* Tex. R. Civ. P. 192.3(e); *Nat'l Lloyds Ins. Co.*, 2014 WL 5785871, at *1–2; *Ford Motor Co.*, 427 S.W.3d at 397.

---

Q. Okay. Tell me, do you know, in 2012, the amount of money that went into collection for patients of yours for the CDC that you were treating under letters of protection?

[Objections omitted. Siroosian was instructed not to answer but agreed to answer concerning Ms. Briones.]

Q. Has Ms. Briones' case gone into collection?

A. Not yet.

[Objections and commentary omitted.]

Q. Well, no, I understand you said "collection." I want to know the next step. You told me what happens. I want to know the next step.

A. Just we send letters and we follow up.

Q. Who would be responsible today for instituting and following up on collection at CDC for Ms. Briones' account should you need it to go into collection?

A. It's going to be our billing department. [Emphasis added.]

Thus, contrary to Mazurek's and the dissent's position, Siroosian did not refuse to answer whether he would "actually look to Ms. Briones for payment of her medical bills"; he expressly testified that he would. Siroosian testified that if there was no recovery in Ms. Briones' case, "She will go to collection."

14

## V. MANDAMUS IS THE PROPER REMEDY

A discovery order that compels production beyond the rules of civil procedure is an abuse of discretion for which mandamus is the proper remedy. *Nat'l Lloyds Ins. Co.*, 2014 WL 5785871, at *1–2 (citing *In re Deere & Co.*, 299 S.W.3d 819, 820 (Tex. 2009) (orig. proceeding); *Texaco, Inc. v. Sanderson*, 898 S.W.2d 813, 815 (Tex. 1995) (orig. proceeding)). If an appellate court cannot remedy a trial court's discovery error on appeal, then an adequate appellate remedy does not exist. *In re Dana Corp.*, 138 S.W.3d 298, 301 (Tex. 2004) (orig. proceeding). Because Siroosian would be compelled to answer questions a through i before any appeal would be available, Relators lack an adequate legal remedy. *See Olinger*, 926 S.W.2d at 836. Accordingly, Relators have met their burden of establishing their right to mandamus relief.

## VI. CONCLUSION

Having determined that Respondent abused his discretion by compelling Siroosian to answer questions a through i and having determined that Relators have no adequate remedy at law, pursuant to Texas Rule of Appellate Procedure 52.8(c), we conditionally grant Relators' petition for writ of mandamus. We direct Respondent, the Honorable Robert Ramirez, to vacate paragraph numbers 1, 2, 3, 4, 5, and 6 of his October 31, 2014 "Order on Defendant's Amended Emergency Motion to Compel the Previously Ordered Full Discovery Responses

15

From Ramin Siroosian, D.C. and Tina Yeshigeta or, in the Alternative, Motion to Strike."[10]  *See* Tex. R. App. P. 52.8(c).  Because we are confident that Respondent will comply with this directive, the writ will issue only if Respondent fails to do so.  Our disposition of this original proceeding serves to lift the stay previously imposed by this court.  *See* Tex. R. App. P. 52.10(b).

/s/ Sue Walker
SUE WALKER
JUSTICE

PANEL:  LIVINGSTON, C.J.; WALKER and GABRIEL, JJ.

LIVINGSTON, C.J., filed a concurring and dissenting opinion.

DELIVERED:  December 9, 2014

---

[10]Neither Relators nor Mazurek raise any complaint that the trial court abused its discretion in paragraphs 7 or 8 of the October 31, 2014 order so we do not order those paragraphs vacated.