**Opinion issued January 12, 2016**



In The

# Court of Appeals

For The

# First District of Texas

_____

## NO. 01-14-00979-CV

_____

## IN RE INTERINSURANCE EXCHANGE OF THE AUTOMOBILE CLUB, Relator

---

### Original Proceeding on Petition for Writ of Mandamus

---

### MEMORANDUM OPINION[1]

In this original proceeding, Relator Interinsurance Exchange of the Automobile Club ("Auto Club"), seeks mandamus relief from the trial court's November 25, 2014 order compelling production of reports submitted to it by its

---

[1] The underlying case is *John Amponsah and Melanie Amponsah v. AAA Texas County Mutual Insurance company, AAA Texas, LLC, AAA Texas, and AAA Texas Interinsurance Exchange of the Automobile Club*, No. 13-DCV-203651, in the 240th District Court of Fort Bend County, the Honorable Thomas R. Culver, III, presiding.

retained engineer, Derrick S. Hancock, between the years 2000 and 2012, all of which relate to insurance claims other than the one at issue in this case. We conditionally grant mandamus relief.

## Background

Real Parties in Interest, John and Melanie Amponsah, held a homeowner's policy with Auto Club. In 2012, they made a claim under that policy due to foundation problems with their home. Auto Club denied the claim based on the finding of its expert, Hancock, that the foundation problems were the result of settling rather than a plumbing leak. The Amponsahs sued Auto Club and other entities, claiming fraud, conspiracy to commit fraud, breach of contract, negligent misrepresentation, gross negligence, and violations of the Deceptive Trade Practices Act and Insurance Code.

The Amponsahs initially sought discovery of information relating to every expert hired by Auto Club in connection with every foundation claim it handled between 2000 and 2013. After the trial court severed the Amponsahs' extra-contractual claims from the breach of contract claim, it instructed the parties to redraft their discovery requests to focus on the breach of contract claim alone.

The Amponsahs deposed Hancock, who testified that he had performed more than fifty evaluations of claims for Auto Club, that he understood his evaluations would be used by Auto Club to determine coverage, and that he found

the damage was caused by settling, rather than plumbing leaks, in approximately 70 to 80% of the foundation damage cases he handled for Auto Club. The day after the deposition, the Amponsahs served additional discovery requesting "[e]very report with Mr. Hancock's name on it, that Mr. Hancock submitted to any person with [Auto Club]." Auto Club objected to the request on the ground that it was overly broad, unduly burdensome, and an impermissible fishing expedition. The Amponsahs moved to compel, arguing that the information was necessary to prove bias.

At a hearing on August 6, 2014, an associate judge granted the motion to compel. Auto Club appealed to the district court judge, who limited the temporal scope of the document request by one year, but nevertheless compelled Auto Club to produce every report Hancock provided to Auto Club between the years 2000 and 2012.

Auto Club asserts that the district court abused its discretion by ordering this discovery because the reports other than those relating to the Amponsahs' claim are irrelevant to the breach of contract issue and, at most, constitute extrinsic evidence of bias that is inadmissible in light of Hancock's deposition testimony. The Amponsahs maintain the documents are necessary to (1) demonstrate whether Hancock applied acceptable methodology in evaluating the Amponsahs' claim, and

(2) show bias, which is always at issue under Texas Rule of Civil Procedure 192.3(e)(5).

## Discussion

### A. Standard of Review

To be entitled to mandamus relief, a relator must demonstrate that (1) the trial court clearly abused its discretion and (2) the relator has no adequate remedy by appeal. *In re Reece*, 341 S.W.3d 360, 364 (Tex. 2011) (orig. proceeding). A trial court clearly abuses its discretion if it reaches a decision so arbitrary and unreasonable as to amount to a clear and prejudicial error of law or if it clearly fails to analyze the law correctly or apply the law correctly to the facts. *In re Cerberus Capital Mgmt., L.P.*, 164 S.W.3d 379, 382 (Tex. 2005) (orig. proceeding) (per curiam). A discovery order that compels production beyond the rules of civil procedure is an abuse of discretion for which mandamus is the proper remedy. *In re Nat'l Lloyds Ins.*, 449 S.W.3d 486, 488 (Tex. 2014) (orig. proceeding) (per curiam) (citing *In re Deere & Co.*, 299 S.W.3d 819, 820 (Tex. 2009) (orig. proceeding) (per curiam)).

### B. Applicable Law

The rules of civil procedure define the scope and methods of expert witness discovery. *See* TEX. R. CIV. P. 192.3(e); *In re Ford Motor Co.*, 427 S.W.3d 396, 397 (Tex. 2014) (orig. proceeding) (per curiam). The scope of information that a

party may discover about testifying expert witnesses includes facts known by the expert forming the basis of his mental impressions and opinions, the expert's mental impressions formed in connection with the case and the methods used to derive them, and "any bias of the witness." TEX. R. CIV. P. 192.3(e). It is not a ground for objection "that the information sought will be inadmissible at trial if the information sought appears reasonably calculated to lead to the discovery of admissible evidence." TEX. R. CIV. P. 192.3(a); *In re Nat'l Lloyds Ins.*, 449 S.W.3d 486 at 488.

However, even these liberal discovery parameters have limits, and discovery requests must not be overbroad. *In re Nat'l Lloyds Ins.*, 449 S.W.3d at 488. Overly broad and expansive discovery requests are particularly troublesome when directed at testifying expert witnesses because such discovery requests can "permit witnesses to be subjected to harassment and might well discourage reputable experts" from participating in the litigation process. *In re Ford Motor Co.*, 427 S.W.3d at 397. Overbroad requests are improper whether they are burdensome or not. *In re Nat'l Lloyds Ins.*, 449 S.W.3d at 488.

Bias, in its usual meaning, is an inclination toward one side of an issue rather than to the other. *See Compton v. Henrie*, 364 S.W.2d 179, 182 (Tex. 1963). Proof of bias on the part of an expert witness may be offered to impeach the expert's credibility. TEX. R. EVID. 613(b). However, "[c]ourts have recognized

5

that discovery into the extent of an expert's bias is not without limits." *In re Ford Motor Co.*, 427 S.W.3d at 397. And the Texas Supreme Court has reasoned that the most probative information regarding the bias of a testifying expert comes from the testimony of the experts themselves. *Id*. at 398.

## C.    Analysis

We conclude that the district court abused its discretion in ordering Auto Club to produce Hancock's reports other than the report addressing the Amponsahs' claim.

Contrary to the Amponsahs' contention, the content of the reports provided by Hancock to Auto Club on claims other than the Amponsahs' claim is not relevant to the Amponsahs' breach of contract claim. The Amponsahs contend that whether Hancock applied acceptable methodology and evaluated the cause of the Amponsahs' foundation failure in accordance with scientific method can only be determined by examining reports he has made in other cases. But the Texas Supreme Court has recently rejected this very argument in a strikingly similar case. In *In re National Lloyds Insurance Company*, 449 S.W.3d 486 (Tex. 2014), the insured, Erving, claimed that National Lloyds breached its insurance contract by underpaying her property damage claims after storms damaged her home in Cedar Hill, Texas. *Id.* at 488. Erving sought all claim files of three individual adjusters for the preceding six years and all claim files of two adjusting firms for the past

6

year. *Id.* "Erving . . . proposed to compare National Lloyds' evaluation of the damage to her home with National Lloyds' evaluation of the damage to other homes to support her contention that her claims were undervalued." *Id.* at 489. The trial court ordered production of the files for claims handled by the two adjusting firms, but limited the claims to those involving properties in Cedar Hill that were damaged by the storms. *Id.* at 488.

The appellate court denied National Lloyds' request for mandamus relief, but the Texas Supreme Court granted relief, noting that it "fail[ed] to see how National Lloyds' overpayment, underpayment, or proper payment of the claims of unrelated third parties is probative of its conduct with respect to Erving's undervaluation claims at issue in this case." *Id.* at 489. The Supreme Court continued, "this is especially so given the many variables associated with a particular claim, such as when the claim was filed, the condition of the property at the time of filing (including the presence of any preexisting damage), and the type and extent of damage inflicted by the covered event." *Id.* In other words, "[s]couring claim files in hopes of finding similarly situated claimants whose claims were evaluated differently from Erving's" in order to prove that National Lloyds breached the contract by underpaying her "[was] at best an 'impermissible fishing expedition.'" *Id.* (quoting *Texaco, Inc. v. Sanderson*, 898 S.W.2d 813, 815 (Tex. 1995) (per curiam)).

Likewise, here, each report prepared by Hancock would be affected by "many variables associated with [that] particular claim, such as when the claim was filed, the condition of the property at the time of filing (including the presence of any preexisting damage)," and other factors. *See id.* These are unique to each claim and have no bearing on whether the damage to the Amponsahs' house was actually caused by settling versus a leak. Accordingly, the reports are not discoverable on the theory that they are evidence that may support their breach of contract claim. *Id.*

The Amponsahs also contend that the reports are discoverable because they are evidence that proves Hancock's bias. But the Amponsahs have already questioned Hancock about his potential bias. As the Texas Supreme Court explained in *In re Ford Motor Company*, 427 S.W.3d 396 (Tex. 2014), "discovery into the extent of an expert's bias is not without limits." *Id.* at 397. In *In re Ford*, the defendant Ford Motor Company's two testifying experts were questioned about the percentage of cases in which they had testified for a plaintiff and about the percentage of the total expert testimony that they had provided that was for Ford Motor Company. *Id.* at 398. But the Supreme Court held that further discovery of "all cases the [experts] have handled for Ford or any other automobile manufacture" over a 12-year period was an impermissible "fishing expedition," and disallowing it did not unduly inhibit discovery of the experts' potential bias.

*Id.* at 397–98. The Supreme Court noted that the plaintiff already had the "most probative information regarding the bias of a testifying expert"—testimony from the experts themselves. *See id.* at 398.

Similarly, here, Hancock testified in his deposition about the number of foundation evaluations he has performed for Auto Club, and further testified that he found that settling rather than plumbing leaks caused the foundation problems in 70 to 80 percent of the claims he has evaluated. This testimony is similar to the expert testimony in *In re Ford* that the Supreme Court described as the most probative type of evidence regarding bias because it came from Hancock himself. *See id.* Likewise, the reports the Amponsahs seek to discover are analogous to the additional discovery requested in *In re Ford*—"all cases the [experts] have handled for Ford or any other automobile manufacturer" over a 12-year period—that was disallowed by the Supreme Court. *Id.* at 397 (restricting additional discovery did not unduly inhibit discovery of experts' potential bias because direct evidence from experts was most probative evidence). Accordingly, the reports are not discoverable to show bias. *See In re Ford*, 427 S.W.3d at 397–98.

### Conclusion

The trial court abused its discretion in compelling discovery of Hancock's reports relating to claims other than the Amponsahs' claim that Hancock provided to Auto Club between 2000 and 2012. Because Auto Club would be forced to

9

produce these reports before an appeal is available, it has no adequate remedy at law and is entitled to mandamus relief. *See In re Dana Corp.*, 138 S.W.3d 298, 301 (Tex. 2014) (orig. proceeding) (per curiam).

We lift our stay and conditionally grant mandamus relief. We direct the trial court to vacate its November 25, 2014 Order Denying Defendants' Appeal of Order Granting Plaintiffs' Motion to Compel Reports by Retained Testifying Expert, and Denying Defendants' Motion For Protective Order. We also direct the trial court to vacate its August 6, 2014 Order Granting Plaintiffs' Motion to Compel Reports by Retained Testifying Expert. We are confident the trial court will comply, and our writ will issue only if it does not.

All pending motions are dismissed as moot.


Rebeca Huddle
Justice

Panel consists of Justices Jennings, Higley and Huddle.