**Cami V. OWENS, Plaintiff,**

v.

**SPRINT/UNITED MANAGEMENT COMPANY, Defendant.**

**Civ.A. No. 03–2371JWL–DJW.**

United States District Court,
D. Kansas.

June 2, 2004.

Dennis E. Egan, Stephen J. Dennis, The Popham Law Firm, P.C., Kansas City, MO, for Plaintiff.

Chris R. Pace, Sprint, Overland Park, KS, Christine F. Miller, James F. Monafo, Husch & Eppenberger, LLC, St. Louis, MO, David M. Eisenberg, Baker, Sterchi, Cowden & Rice, L.L.C., Patrick F. Hulla, John J. Yates, Husch & Eppenberger, LLC, Kansas City, MO, for Defendant.

## MEMORANDUM AND ORDER

WAXSE, United States Magistrate Judge.

This matter comes before the Court on Plaintiff's Motion to Compel Answers to Interrogatories and Production of Documents (doc. 36). Plaintiff requests that Defendant be compelled to provide complete answers to her Opening Interrogatories and to produce documents responsive to her First Request for Production of Documents. She further requests an award of her expenses and sanctions, if appropriate. Plaintiff has filed a Certificate of Compliance (doc. 38) of her efforts to confer with Defendant's counsel prior to filing this motion. For the reasons set forth below, Plaintiff's motion is granted in part and denied in part.

### I. Introduction and Brief Factual Background

Plaintiff brings this action against Defendant asserting claims for sex discrimination under Title VII of the Civil Rights Act of 1964,[1] and age discrimination under the Age Discrimination in Employment Act ("ADEA").[2] She alleges that Defendant demoted her from her position as Senior Director of International Service Management ("ISM") to a lower-grade managerial position based upon her gender and age when it relocated her Director's position to Virginia and filled it with a younger, male employee. Plaintiff's former position as Senior Director of International Service Management is organized within Defendant's Business Support Services unit, which is a sub-unit of Defendant's Global Markets Group.

On November 24, 2003, Plaintiff served Defendant with her Opening Interrogatories and First Request for Production of Documents.[3] Defendant served its initial answers and objections to Plaintiff's discovery requests on December 23, 2003.[4] On January 19, 2004, Defendant served its First Supplemental Answers and Objections to Plaintiff's Opening Interrogatories.[5] After attempting to confer with Defendant to resolve the issue without court action, as required by Fed. R.Civ.P. 37(a)(2)(A) and D. Kan. Rule 37.2, Plaintiff filed the instant motion to compel on January 22, 2004.

### II. Discovery Requests at Issue

Plaintiff's Motion to Compel Answers to Interrogatories and Production of Documents requests that Defendant be compelled to provide complete answers to Plaintiff's Opening Interrogatories Nos. 3, 4, 5, 8, 9, 11, and 12 and produce documents responsive to her First Requests for Production Nos. 9, 10, 12, 17, and 20. Since Plaintiff filed her motion, it now appears that the parties have been able to informally resolve the majority of their disputes on these discovery requests. Thus, the Court will only address the parties' two remaining open disputes, i.e., Plaintiff's Opening Interrogatory No. 3/ Request No. 17 and Request Nos. 9 and 10.

### A. Opening Interrogatory No. 3 and First Request for Production No. 17

Plaintiff's Opening Interrogatory No. 3 inquires whether Defendant, at any time since March 2000 to the present date, has been the

---

1. 42 U.S.C. § 2000e *et seq.*

2. 29 U.S.C. § 621 *et seq.*

3. *See* Certificate of Service of Pl.'s First Interrogs. & First Req. for Produc. of Docs. to Def. (doc. 22).

4. *See* Certificate of Service for Def.'s Answers and Objections to Pl.'s Opening Interrogs. (doc. 30) & First Req. for Produc. of Docs. (doc. 31).

5. *See* Certificate of Service for Def.'s First Supplemental Answers & Objections to Pl.'s Opening Interrogs. (doc. 35).

subject of any investigation by any local, state, or federal agency as to its employment practices, including any charges of age discrimination and sex discrimination, other than those filed by Plaintiff. Plaintiff's First Request for Production of Documents No. 17 asks for "[a]ny and all documents relating to other charges of age discrimination and/or sex discrimination filed against defendant with any state or federal regulatory body or court, from January 2000 to present."

In both its initial and supplemental Answers and Objections to Plaintiff's Opening Interrogatory No. 3, Defendant objected on the grounds that the interrogatory seeks information which is irrelevant and not reasonably calculated to lead to the discovery of admissible evidence. It further objected on the grounds that the scope of the interrogatory is overly broad and seeks information which is shielded from discovery under the attorney client privilege and/or the attorney work product doctrine. Defendant objected to Request No. 17 to the extent the request seeks information that is irrelevant and not reasonably calculated to lead to the discovery of admissible evidence.

### 1. Relevancy objections

Defendant objected to both Interrogatory No. 3 and Request for Production No. 17 on the grounds that they seek information which is irrelevant and not reasonably calculated to lead to the discovery of admissible evidence. Plaintiff argues that the testimony of other employees about their treatment by defendant is relevant to the issue of the employer's discriminatory intent.

 Federal Rule of Civil Procedure 26(b)(1) provides that "[p]arties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party.... Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence."[6] Relevancy is broadly construed, and a request for discovery should be considered relevant if there is "any possibility" that the information sought may be relevant to the claim or defense of any party.[7] A request for discovery should be allowed "unless it is clear that the information sought can have no possible bearing" on the claim or defense of a party.[8] When the discovery sought appears relevant, the party resisting the discovery has the burden to establish the lack of relevance by demonstrating that the requested discovery (1) does not come within the scope of relevance as defined under Fed.R.Civ.P. 26(b)(1), or (2) is of such marginal relevance that the potential harm occasioned by discovery would outweigh the ordinary presumption in favor of broad disclosure.[9] Conversely, when the request is overly broad on its face or when relevancy is not readily apparent, the party seeking the discovery has the burden to show the relevancy of the request.[10]

Discovery in employment discrimination cases depends heavily upon the particular circumstances of the case.[11] The Tenth Circuit has indicated that discovery in discrimination cases should not be narrowly circumscribed.[12] The scope of discovery is particularly broad in a Title VII case, and "an employer's general practices are relevant even when a plaintiff is asserting an individual claim for disparate treatment."[13] This desire to allow broad discovery, however, is not without limits, and the trial court is given wide discretion in balancing the

---

**6.** Fed.R.Civ.P. 26(b)(1).

**7.** *Sheldon v. Vermonty*, 204 F.R.D. 679, 689–90 (D.Kan.2001) (citations omitted).

**8.** *Id.*

**9.** *Gen. Elec. Capital Corp. v. Lear Corp.*, 215 F.R.D. 637, 640 (D.Kan.2003) (citing *Scott v. Leavenworth Unified Sch. Dist. No. 453*, 190 F.R.D. 583, 585 (D.Kan.1999)).

**10.** *Steil v. Humana Kansas City, Inc.*, 197 F.R.D. 442, 445 (D.Kan.2000).

**11.** *Epling v. UCB Films, Inc.*, No. 98–4226–RDR, 98–4227–RDR, 00–4062–RDR, 2001 WL 584355, at *4 (D.Kan. Apr. 2, 2001).

**12.** *Gomez v. Martin Marietta Corp.*, 50 F.3d 1511, 1520 (10th Cir.1995) (citing *Rich v. Martin Marietta Corp.*, 522 F.2d 333, 343–44 (10th Cir. 1975)).

**13.** *Id.* (citing *Scales v. J.C. Bradford & Co.*, 925 F.2d 901, 906 (6th Cir.1991)).

needs and rights of both plaintiff and defendant.[14] Information that may establish a pattern of discrimination is discoverable even when the action seeks only individual relief.[15] When the motive or intent of a defendant employer is at issue, information concerning its conduct towards employees other than the plaintiff is relevant.[16]

■ In this case, the Court determines that these discovery requests, which ask for information on other charges of age and sex discrimination filed against Defendant with any state or federal regulatory body or court, seek information which is relevant and reasonably calculated to lead to the discovery of admissible evidence. Defendant's relevancy objections to Plaintiff's Opening Interrogatory No. 3 and First Request for Production of Documents No. 17 are therefore overruled.

### 2. Overly broad objection—work unit

Defendant also contends that Plaintiff's Opening Interrogatory No. 3 and Request No. 17 seek information beyond the permissible scope of discovery. It argues that the discovery requests should be limited in scope to the geographic location in which Plaintiff worked and the work unit within Defendant that employed Plaintiff. Defendant states that at the time of the alleged discrimination Plaintiff was employed in its Business Support Services unit. It argues that Plaintiff's discovery requests seeking information relating to other sex and age discrimination charges and investigations should be restricted to its Business Support Services, the work unit within which Plaintiff was employed at the time of the alleged discrimination.

In her reply brief, Plaintiff argues that the appropriate limit on the scope of the discovery requests should be Defendant's Global Markets Group, not the sub-unit called Business Support Services. She cites this Court's decision in *Doebele v. Sprint Corporation* [17] in support of her position that she should be allowed discovery of other charges and investigations of discrimination originating from the "business unit" that employs her, i.e., Defendant's Global Markets Group.

In Defendant's sur-reply, it maintains that the Court should resolve this issue by determining whether its Global Markets Group or Business Support Services would be the most likely source of relevant information relating to its treatment of other employees. Defendant urges the Court to define "business unit" as its Business Support Services unit for purposes of this motion. It asserts that there are more than 20,000 employees in its Global Markets Group. Of that number, the large majority of employees in its Global Markets Group are not similarly situated to Plaintiff. It asserts that its Global Markets Group is too large and would encompass many employees who are extremely remote to Plaintiff.

■ When addressing overly broad objections to discovery requests, courts have limited the geographic scope of discovery.[18] In non-class action employment discrimination cases, the standard for determining the geographic scope of discovery focuses on "the source of the complained discrimination—the employing unit or work unit." [19] In the absence of any evidence that there were hiring or firing practices and procedures applicable to all the employing units, discovery may be limited to plaintiff's employing unit.[20] Dis-

14. *Id.*

15. *EEOC v. Kansas City S. Ry.,* No. 99–2512–GTV, 2000 WL 33675756, at \*4 (D.Kan. Oct. 2, 2000) (citing *Johnson v. W.H. Stewart Co.,* 75 F.R.D. 541, 543 (W.D.Okla.1976)).

16. *Spulak v. K Mart Corp.,* 894 F.2d 1150, 1156 (10th Cir.1990).

17. No. 00–2053–KHV, 2001 WL 1718259, at \*8 (D.Kan. June 5, 2001).

18. *See, e.g., Mackey v. IBP, Inc.,* 167 F.R.D. 186, 195 (D.Kan.1996) (limiting scope of discovery to defendant's Emporia plant that employed plaintiff); *Gheesling v. Chater,* 162 F.R.D. 649, 650 (D.Kan.1995) (limiting scope to plaintiff's employing unit); *Doebele,* 2001 WL 1718259, at \*8 (limiting scope of discovery to Kansas employees of defendant's PCS unit); *EEOC v. Kansas City S. Ry.,* 2000 WL 33675756, at \*4–5 (limiting scope of discovery to Gulf region).

19. *Mackey,* 167 F.R.D. at 195 (quoting *Heward v. W. Elec. Co.,* No. 83–2293, 1984 WL 15666, at \*6 (10th Cir. July 3, 1984)).

20. *See Joslin Dry Goods Co. v. EEOC,* 483 F.2d 178, 184 (10th Cir.1973).

covery may be expanded from the Plaintiff's employing unit, however, if the plaintiff can show the requested information is "particularly cogent" to the matter [21] or if the plaintiff can show a "more particularized need for, and the likely relevance of, broader information." [22]

■ In determining the appropriate employing unit of the plaintiff alleging employment discrimination, courts look to the level of the supervisor or supervisors who are primarily responsible for the employment decision regarding the plaintiff and other similarly-situated employees. [23] The rationale is that the motive and intent of the supervisors who made the employment decisions relating to the plaintiff and other employees is relevant to determining whether the employment decision was discriminatory.

■ In this case, the Court must determine what corporate division within Defendant, its Global Markets Group or a smaller sub-unit, its Business Support Services unit, constitutes Plaintiff's work unit for purposes of defining the geographic scope limitation on her discovery requests. In making this determination, the Court will focus on who were the key supervisors responsible for the allegedly discriminatory employment decision.

The Court finds that the decisions to fill Plaintiff's ISM director position with another younger, male employee and demote her to a lower-grade managerial position were made by Plaintiff's supervisors in Defendant's Business Support Services unit. The content of e-mails dated September 16, 2002 and September 26, 2002, sent from Mike Reilly, Plaintiff's immediate supervisor, to Tim McKinley, vice president of Business Support Services, support that they were the key decision makers. Because these key decision makers were employed within Defendant's Business Support Services unit, that unit would be the appropriate employing unit or work unit for limiting the geographic scope of Plaintiff's discovery requests.

Furthermore, Defendant's September 30, 2002 internal Employee News Bulletin,[24] which announced its organizational changes, including the new director positions of Plaintiff and the employee who assumed her former ISM position, is entitled "An Important Message for Sprint *Business Support Services Associates*" and the subject line reflects "Organizational changes in Sprint *Business Support Services.*" [25] In addition, throughout the document, several references are made to Sprint Business Support Services. This internal usage of the Business Support Services organization name rather than Global Markets Group supports Defendant's position that Plaintiff's "employing unit or work unit" is the Business Support Services unit. In addition, there is no evidence that individuals at Defendant's Global Markets Group level made the decisions to fill Plaintiff's Senior Director position with a younger, male employee and to demote her to a lower-grade level managerial position.

Plaintiff asserts that the Court's decision in *Doebele*, limiting similar discovery requests to Kansas employees in Defendant's PCS business unit, supports her position that the discovery requests should only be limited to Defendant's larger Global Markets Group. She points out that in *Doebele* the plaintiff was employed as a financial analyst in Defendant's Table's Department, which was a department organized with Defendant's larger PCS business unit. In that case, the Court limited the scope of the plaintiff's discovery requests to Kansas employees in the defendant's PCS business unit.[26]

**21.** *See Heward*, 1984 WL 15666, at *6.

**22.** *Haselhorst v. Wal–Mart Stores, Inc.*, 163 F.R.D. 10, 11 (D.Kan.1995) (citing *Earley v. Champion Int'l Corp.*, 907 F.2d 1077, 1084–85 (11th Cir.1990); *James v. Newspaper Agency Corp.*, 591 F.2d 579, 582 (10th Cir.1979); *Serina v. Albertson's, Inc.*, 128 F.R.D. 290, 291–92 (M.D.Fla.1989); *Prouty v. Nat'l R.R. Passenger*, 99 F.R.D. 545, 547 (D.D.C.1983)).

**23.** *EEOC v. Kansas City S. Ry.*, 2000 WL 33675756, at *4–5; *Bryant v. Farmers Ins. Co.*, No. 01–02390–CM, 2002 WL 1796045, at *3 (D.Kan. July 31, 2002).

**24.** Ex. D to Def. Sprint's Opposition to Pl.'s Mot. to Compel (doc. 45).

**25.** *Id.* (emphasis added).

**26.** *Doebele*, 2001 WL 1718259, at *8.

Plaintiff urges the Court to limit the scope of her discovery request to Defendant's applicable PCS business unit counterpart in this case, its Global Markets Group. She asserts that Defendant has admitted that its four "business units" are Global Markets Group ("GMG"), Personal Communications Systems ("PCS"), Local Telecommunications Division ("LTD"), and Corporate.

Notably, in *Doebele* the Court limited discovery to the *Kansas employees* of Defendant's PCS's unit.[27] Thus, contrary to Plaintiff's suggestion that the scope of discovery should be limited to Defendant's applicable "business unit," the Court did not define the geographic scope in *Doebele* as defendant's PCS business unit, but rather the *Kansas employees* of defendant's PCS business unit.[28] The *Doebele* geographic limitation was much more restrictive than the scope proposed by Plaintiff here. In this case, however, the parties agree that a geographic restriction to Kansas only, as ordered by the Court in *Doebele*, would probably be too restrictive because Defendant's Business Support Services unit spans several different geographic locations. The Court therefore declines to apply the same geographic discovery limitation as utilized in *Doebele*.

Absent a showing by Plaintiff of a more particularized need for, and the likely relevance of, expanding discovery to Defendant's Global Markets Group, the appropriate employing unit for limiting the geographic scope of Plaintiff's Opening Interrogatory No. 3 and Request No. 17 is Defendant's Business Support Services. Because Plaintiff has failed to present any evidence to justify discovery beyond Defendant's Business Support Services unit, Plaintiff's Opening Interrogatory No. 3 and Request No. 17 should there-fore be limited in geographic scope to Defendant's Business Support Services unit.

*3. Overly broad objection—time period*

██ Defendant also contends that the time frame of the discovery requests is too broad. It argues that Plaintiff seems to have arbitrarily selected January 2000 as the relevant time period and that a claim filed four years ago is not relevant to this action. Defendant submits that the temporal scope should be limited to the period of time equaling two years prior to the alleged discriminatory behavior through the present.

With regard to temporal scope, discovery of information both before and after the liability period within a Title VII lawsuit may be relevant and/or reasonably calculated to lead to the discovery of admissible evidence and courts commonly extend the scope of discovery to a reasonable number of years both prior to and following such period.[29] Thus, the task of the trial court is to balance the clear relevance of the information against the burden on the defendant.[30]

Plaintiff's Opening Interrogatory 3 requests information on other age or sex discrimination investigations of Defendant by any local, state or federal agencies for the time period March 2000 to the present date. Plaintiff's First Request for Production No. 17 seeks documents relating to other charges of age or sex discrimination for the time period January 2000 to the present.

In her Amended Complaint, Plaintiff alleges that in September 2002 one of her supervisors questioned her whether she would consider moving because her position was going to be relocated to Reston, Virginia. Later that month, Plaintiff learned that her position would move to Virginia and be filled by a

**27.** *Id.* (emphasis added).

**28.** *Id.*

**29.** *See, e.g., James,* 591 F.2d at 582 (four years prior to liability period reasonable); *Gen. Ins. Co. v. EEOC,* 491 F.2d 133 (9th Cir.1974) (eight years prior to liability period held excessive); *EEOC v. Kansas City S. Ry.,* 195 F.R.D. 678 (D.Kan.2000) (allowing discovery four years prior and one year after alleged discriminatory conduct); *Raddatz v. Standard Register Co.,* 177 F.R.D. 446, 448 (D.Minn.1997) (allowing discovery into the period two years after termination);

*Lyoch v. Anheuser–Busch Companies, Inc.,* 164 F.R.D. 62, 67 (E.D.Mo.1995) (four years prior to liability period reasonable); *Hicks v. Arthur,* 159 F.R.D. 468, 471 (E.D.Pa.1995) (allowing discovery to extend to the period two years after the tenure of the plaintiffs); *Stevenson v. Gen. Elec. Co.,* No. C–1–77–122, 1978 WL 150, at *1 (S.D.Ohio Oct. 4, 1978) (noting emergence of a "five-year rule").

**30.** *Clarke v. Mellon Bank,* No. 92–CV–4823, 1993 WL 170950, at *2 (E.D.Pa. May 11, 1993).

younger, male employee. She thereafter applied for and attempted to secure another permanent Director's position within Defendant without success. On or about March 25, 2003, Plaintiff filed charges of sex discrimination and age discrimination with the Equal Employment Opportunity Commission ("EEOC"). On April 1, 2003, Defendant eliminated Plaintiff's position as Senior Director and demoted her to the position of Group Manager.

Based upon Plaintiff's claims, Defendant's allegedly discriminatory conduct occurred after September 2002, when she was questioned whether she would consider relocating with her position. Her discovery requests inquiring about other investigations and charges of discrimination for the time periods starting March 2000 and January 2000, respectively, thus seek discovery for approximately two and a half years prior to the alleged discriminatory conduct.

Upon weighing the relevancy of the information sought against the burden imposed upon Defendant under the particular facts presented here, the Court is persuaded that the temporal scope of Plaintiff's discovery requests is not overly broad. The Court determines that discovery seeking information starting two and a half years prior to the discriminatory conduct is a reasonable period of time and in line with the majority of cases addressing this discovery issue. The Court therefore declines to limit the temporal scope of Plaintiff's Opening Interrogatory 3 and First Request No. 17 as requested by Defendant.

### 4. Attorney-client privilege/work product objection

Defendant also objected to Plaintiff's Opening Interrogatory No. 3 on the grounds that is seeks information which is shielded from discovery under the attorney client privilege and/or the attorney work product doctrine. The Court notes that the parties do not appear to address this objection in their briefing to the Motion to Compel. As the parties have not addressed this objection, the Court is unable to ascertain the status of this objection and will therefore address this objection at the final pretrial conference on *June 8, 2004*. The parties should be prepared to address this objection or advise the Court that is has been informally resolved.

### B. First Request for Production Nos. 9 and 10

Plaintiff's First Request for Production of Documents No. 9 seeks "[t]he complete personnel files, (and other files), of all management and/or supervisory employees that supervised plaintiff from January, 2000 to the present date, including, but not limited to Mike Reilly, Tim McKinley, and Jo Blagovich, including copies of all evaluations of *their* work performance, and alpha ratings, while in the employ of defendant." Request No. 10 seeks documents "which relate to the performance, alpha ratings, compensation or duties of the individuals named in request No. 9 above, but are not kept in their personnel files, such as kept in the supervisor's files and/or files maintained by some other entity."

The Court notes that Plaintiff's motion is unclear whether she seeks to compel production of personnel files of management and/or supervisory employees *other than* Plaintiff's three named supervisors—Mike Reilly, Tim McKinley, and Jo Blagovich. Because Plaintiff does not discuss any production of personnel files for any management and/or supervisory employees other than Reilly, McKinley, and Blagovich, the Court will limit the motion to the personnel files of these three supervisors.

Defendant states in its Opposition to Plaintiff's Motion to Compel that it has informally agreed to produce, and has produced, the personnel files of Mike Reilly, Tim McKinley, and Jo Blagovich, Plaintiff's supervisors at the time of the alleged discrimination. In her reply brief, Plaintiff advises the Court that although Defendant has agreed to produce updated information in the personnel files of three of Plaintiff's supervisors, it has not yet done so. To the extent that Defendant has not already produced this information, it. shall produce updated information in the personnel files of Mike Reilly, Tim McKinley, and Jo Blagovich *within ten (10) days of the date of this Order*.

## III. Sanctions

As the Court is unable to rule on the entirety of Plaintiff's Motion to Compel Answers to Interrogatories and Production of Documents, the Court will defer ruling on sanctions until after the final pretrial conference.

IT IS THEREFORE ORDERED that Plaintiff's Motion to Compel Answers to Interrogatories and Production of Documents (doc. 36) is granted in part and denied in part. *Within ten (10) days of the date of this Order,* Defendant shall serve its supplemental answer to Plaintiff's Opening Interrogatory No. 3 and produce documents responsive to Plaintiff's First Request for Production of Documents Nos. 17. Any such supplemental answer or document production shall be limited in geographic scope to Defendant's Business Support Services unit. Defendant does not have to answer Interrogatory No. 3 with information that it claims is shielded from discovery under the attorney-client privileged and/or work product doctrine.

IT IS FURTHER ORDERED that Defendant's request to limit the temporal scope of Plaintiff's Opening Interrogatory No. 3 and First Request for Production of Documents Nos. 17 to two years prior to the alleged discriminatory conduct is denied.

IT IS FURTHER ORDERED that the Court will take up Defendant's privilege objection to Plaintiff's Opening Interrogatory No. 3 at the final pretrial conference on *June 8, 2004.* The parties should be prepared to address this objection or advise the Court that is has been informally resolved.

IT IS FURTHER ORDERED that to the extent that Defendant has not already produced updated information in the personnel files of three of Plaintiff's supervisors, it shall produce this information *within ten (10) days of the date of this Order.*

IT IS FURTHER ORDERED that the Court will defer ruling on sanctions until after the final pretrial conference.

**IT IS SO ORDERED.**