

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

———————————————————

No. 02-20-00350-CV

———————————————————

IN RE TEXAS CHRISTIAN UNIVERSITY, Relator

---

Original Proceeding
342nd District Court of Tarrant County, Texas
Trial Court No. 342-307963-19

---

Before Sudderth, C.J.; Birdwell and Bassel, JJ.
Memorandum Opinion by Justice Bassel

# MEMORANDUM OPINION

## I.     Introduction

This original proceeding arises from a discrimination lawsuit.  Relator, Texas Christian University, seeks a writ of mandamus challenging the trial court's discovery order.  TCU complains that certain categories of information that real party in interest, Ricardo Avitia, seeks to obtain are overbroad and irrelevant to the issues in this litigation.  We agree because Avitia seeks institution-wide—specifically in this case, university-wide—discovery while his discrimination claim only involves the department where he was employed and the actions of his supervisors in that department.  There is no basis to expand discovery beyond that relating to TCU's actions directed specifically toward Avitia or those similarly situated to him.  We conditionally grant mandamus relief.

## II.     Procedural and Factual Background

Avitia worked in TCU's Registrar's Office from June 16, 2011, until April 26, 2018.  Avitia, a Hispanic veteran, assisted student veterans applying for financial aid benefits.  Avitia's position in the Registrar's Office was classified as nonexempt under the Fair Labor Standards Act—meaning Avitia was paid for the hours that he worked rather than paid a salary.  In the fall of 2017, Avitia approached his supervisor, Registrar Mary Kincannon, and requested that his position in the Registrar's Office be reclassified as exempt.  Avitia's request was denied.

In January 2018, Avitia complained that he was the subject of discrimination because his counterpart in the Registrar's Office, a Caucasian woman, was an exempt employee and he was not. In April 2018, Kincannon fired Avitia because he was not completing his tasks in a timely manner.[1]

Avitia subsequently filed a lawsuit against TCU claiming that he was fired in retaliation for his discrimination complaint and because of his race and national origin. Avitia's lawsuit is not a class action suit; his claims are based solely on his supervisors', in the Registrar's Office, actions towards him. Moreover, Avitia does not claim that he was terminated pursuant to a university-wide policy. Yet, as an effort to obtain information regarding discrimination and retaliation at TCU university-wide, Avitia sought discovery of all complaints alleging discrimination due to race, national origin, age, sex, disability, and any other form of illegal discrimination, made by any employee or student at TCU in any department.[2]

On June 24, 2020, Avitia noticed the deposition of a TCU organizational representative. The notice sought testimony of twenty-one categories of topics relating to, among other things, reports of discrimination made by any student, faculty, or staff member received by TCU's Campus Community Response Team,

---

[1]Avitia was given sixty days to improve his performance prior to his termination. However, Avitia's job performance did not improve during the sixty days, and he was later terminated.

[2]Avitia sought discovery by interrogatory, request for production, and deposition testimony from a designated organizational representative.

Human Resources Department, Title IX office, or its Chief Inclusion Officer. Additionally, the notice included a subpoena seeking production of nineteen categories of mostly university-wide documents regarding diversity in TCU's entire workforce, including TCU's Strategic Plan and reports; as well as the budgets and minutes of its Diversity, Equity, and Inclusion Committee during the years 2015–2020; and training materials that pertain to TCU's hiring and recruiting practices. The notice further stated that the organizational representative would be expected to testify about the produced documents.

TCU moved to quash the deposition notice and subpoena and sought entry of a protective order. TCU objected to all discovery that did not pertain to Avitia's work unit—the Registrar's Office. This included testimony about and discovery of reports, budgets, statistics, initiatives, and training materials that pertain to TCU's hiring and recruiting practices; its Diversity, Equity, and Inclusion Committee; its Campus Community Response Team; its Human Resources Department; and its Strategic Plan. Finally, TCU objected to any discovery relating to students, faculty, or management because Avitia is not a student or member of TCU's faculty or management. After TCU filed its Motion to Quash, Avitia moved to compel TCU to answer certain interrogatories and produce certain documents.

On July 21, the trial court heard TCU's Motion to Quash as well as Avitia's Motion to Compel. On August 18, the trial court issued its ruling which is the subject of this mandamus petition. In its order, the trial court granted TCU's objections to

4

the extent that TCU asserted that it should not be compelled to answer interrogatories, produce documents, and give testimony concerning complaints of discrimination made by students at TCU. But the trial court did not modify its order as it relates to answering interrogatories, producing documents, and providing testimony regarding information that does not pertain to Avitia's work unit.

After its entry, TCU requested clarification of the August 18 order, and the trial court held a hearing on August 28. But again, the trial court refused to alter its order requiring TCU to answers questions, provide testimony, and produce documents relating to departments outside of the Registrar's Office.

On October 28, Avitia sent TCU a Second Amended Notice of Intent to Take Oral Deposition of an Organizational Representative of TCU and Subpoena Duces Tecum. Shortly after, TCU filed this Petition for Writ of Mandamus asserting that the trial court abused its discretion when it ordered TCU to respond to irrelevant and overbroad discovery.

### III.   Laches

Avitia contends, as an initial matter, that TCU failed to diligently pursue mandamus relief. To invoke the equitable doctrine of laches, the moving party ordinarily must show an unreasonable delay by the opposing party in asserting its rights and also must show its good faith and detrimental change in position because of the delay. *In re Laibe Corp.*, 307 S.W.3d 314, 318 (Tex. 2010) (orig. proceeding) (citing *Rogers v. Ricane Enters., Inc.*, 772 S.W.2d 76, 80 (Tex. 1989)). Assuming without

5

deciding that TCU's delay in filing its Petition for Writ of Mandamus was unreasonable, we hold that Avitia has failed to show that he has suffered prejudice due to the delay.

To prove that laches bars TCU's requested relief, Avitia must show that he was harmed by the delay. *In re Hinterlong*, 109 S.W.3d 611, 620 (Tex. App.—Fort Worth 2003, orig. proceeding [mand. denied]) (op. on reh'g) (requiring a showing of harm to real party in interest before mandamus relief may be denied because of unreasonable delay). Avitia asserts that he signed an Agreed Scheduling Order and agreed to cut off discovery based on TCU's representation that it would provide an organizational representative for deposition. Apparently, Avitia claims that TCU is now reneging on its promise. However, as TCU states in its reply, it has never taken the position that Avitia cannot depose an organizational representative. TCU merely seeks to limit the categories of topics for such deposition to topics that are discoverable under applicable legal precedent in individual employment discrimination cases.

To the extent that Avitia is arguing that he agreed to the scheduling order because TCU promised him that he could depose an organizational representative on every subject matter he proposed, he has failed to provide a record to support such a contention. Therefore, Avitia has failed to show a good faith and detrimental change in position due to TCU's alleged delay in filing this mandamus petition—which he must establish as the party asserting laches. *In re Laibe*, 307 S.W.3d at 318. Accordingly, laches does not bar our consideration of this petition.

## IV.  Standard of Review

This court may grant mandamus relief from a discovery order only when (1) the trial court's decision is so arbitrary and unreasonable that it is "a clear and prejudicial error of law" and (2) the relator has no adequate remedy by appeal. *In re State Farm Lloyds*, 520 S.W.3d 595, 604 (Tex. 2017) (orig. proceeding). In determining whether the trial court abused its discretion, we may not substitute our judgment for the trial court's determination of factual or other discretionary matters. *Id.* But because a trial court has no discretion in determining what the law is or applying it, we review its decisions on questions of law and application-of-law-to-fact questions much less deferentially. *Id.* A trial court's clear failure to correctly analyze or apply the law is an abuse of discretion. *In re M-I L.L.C.*, 505 S.W.3d 569, 574 (Tex. 2016) (orig. proceeding)

When considering a claimed abuse of discretion, we are mindful that discovery's purpose is to seek the truth so that disputes may be decided by what the facts reveal, not by what they conceal. *In re Colonial Pipeline Co.*, 968 S.W.2d 938, 941 (Tex. 1998) (orig. proceeding). But, "although the permitted scope of discovery is generally broad, a discovery request 'must show a reasonable expectation of obtaining information that will aid the dispute's resolution.'" *In re CAR Fin. Servs., Inc.*, No. 02-20-00157-CV, 2020 WL 4213839, *3 (Tex. App.—Fort Worth July 23, 2020, orig. proceeding) (mem. op.) (quoting *In re Nat'l Lloyds Ins. Co.*, 532 S.W.3d 794, 808 (Tex. 2017) (orig. proceeding)). However, even when a trial court abuses its discretion in

7

making a discovery ruling, we will not intervene if the relator has an adequate remedy by appeal. *In re Prudential Ins. Co. of Am.*, 148 S.W.3d 124, 135–36 (Tex. 2004) (orig. proceeding). Appeal is inadequate when a party is in danger of losing substantial rights, such as (1) when an appellate court could not cure the trial court's discovery error, (2) when the discovery error vitiates or severely compromises a party's ability to present a viable claim or defense at trial, or (3) when a party cannot make excluded discovery part of the appellate record or the trial court, after proper request, refuses to make it part of the record. *See In re Van Waters & Rogers, Inc.*, 145 S.W.3d 203, 211 (Tex. 2004) (orig. proceeding); *Walker v. Packer*, 827 S.W.2d 833, 843–44 (Tex. 1992) (orig. proceeding). In determining whether appeal is an adequate remedy, we must consider whether the benefits of mandamus review outweigh the detriments. *In re BP Prods. N. Am., Inc.*, 244 S.W.3d 840, 845 (Tex. 2008) (orig. proceeding); *see In re Garza*, 544 S.W.3d 836, 841 (Tex. 2018) (orig. proceeding) (holding "[a]ppeal is not an adequate remedy where the practically certain effect of the sanctions will be reversal with the attendant waste of resources and time.").

## V. Permissible Scope of Discovery

The scope of discovery is generally within the trial court's discretion so long as a discovery order does not exceed what the Rules of Civil Procedure permit. *See* Tex. R. Civ. P. 192.4; *In re N. Cypress Med. Ctr. Operating Co.*, 559 S.W.3d 128, 129 (Tex. 2018) (orig. proceeding) ("Our procedural rules allow broad discovery of unprivileged information that is 'relevant to the subject matter of the pending action.'" (quoting

8

Tex. R. Civ. P. 192.3(a))); *In re State Farm Lloyds*, 520 S.W.3d at 604. But a discovery order that compels production beyond the rules of procedure is an abuse of discretion for which mandamus is the proper remedy. *In re Nat'l Lloyds Ins. Co.*, 507 S.W.3d 219, 223–24 (Tex. 2016) (orig. proceeding); *accord In re Siroosian*, 449 S.W.3d 920, 927 (Tex. App.—Fort Worth 2014, orig. proceeding) (holding discovery request is overbroad if not reasonably tailored to include only matters relevant to case, such as requiring document production from distant and unrelated locales).

In employment suits, the nature of the discrimination claim determines the scope of discovery allowed. Courts distinguish between an individual's claim against a company for acts committed against that individual and company-wide claims alleging that a company has a pattern or practice of discrimination against a particular classification of employees. *In re Greyhound Lines, Inc.*, 138 S.W.3d 19, 21 (Tex. App.—San Antonio 2004, orig. proceeding) (citing *In re i2 Techs., Inc.*, No. 05-98-01780-CV, 1998 WL 887558, at *1 (Tex. App.—Dallas Dec. 22, 1998, orig. proceeding) (not designated for publication) and comparing *Mayberry v. Vought Aircraft Co.*, 55 F.3d 1086, 1090 (5th Cir. 1995) (individual claim of discrimination), with *Duke v. Univ. of Tex. at El Paso*, 729 F.2d 994, 995 (5th Cir. 1984) (consolidating claims of university-wide problem)). In a claim for individual acts of discrimination, the plaintiff is not necessarily entitled to information about other employees, unless those other employees are "similarly situated." *See, e.g., Ysleta ISD v. Monarrez*, 177 S.W.3d 915, 917 (Tex. 2005) (holding employees are "similarly situated" if their circumstances are

comparable in all material respects, including similar standards, supervisors, and conduct); *Texaco, Inc. v. Sanderson*, 898 S.W.2d 813, 814 (Tex. 1995) (orig. proceeding) (holding plaintiff claiming personal injuries at one plant not entitled to company-wide broad discovery of safety documents not related to plaintiff's circumstances).

The Fifth Circuit has adopted a similar standard in employment claims, referring to relevant discovery as that which involves employees whose circumstances are "nearly identical" to that of the plaintiff.[3] *See Mayberry*, 55 F.3d at 1090. "Similarly situated" or "nearly identical" generally means activity in the same department or office, by the same supervisory personnel, and by the same pattern of conduct. *See, e.g.*, *Wallace v. Methodist Hosp. Sys.*, 271 F.3d 212, 221 (5th Cir. 2001) (holding "conduct at issue is not nearly identical when the difference between the plaintiff's conduct and that of those alleged to be similarly situated accounts for the difference in treatment received from the employer" (citing *Wyvill v. United Cos. Life Ins. Co.*, 212 F.3d 296, 304–05 (5th Cir. 2000))); *Rubinstein v. Adm'rs of Tulane Educ. Fund*, 218 F.3d 392, 398 (5th Cir. 2000) (limiting discovery of professor employed in mechanical engineering department of university to records of those in mechanical engineering department

---

[3]Avitia's lawsuit is an employment discrimination suit brought under Chapter 21 of the Texas Labor Code. Chapter 21 purports to correlate "state law with federal law in the area of discrimination in employment." *NME Hosps., Inc. v. Rennels*, 994 S.W.2d 142, 144 (Tex. 1999). Thus, Texas courts look to analogous federal precedent for guidance when interpreting the Texas Act. *See id.*; *Reed v. Cook Children's Med. Ctr., Inc.*, No. 02-13-00405-CV, 2014 WL 2462778, at *4 (Tex. App.—Fort Worth May 29, 2014, no pet.) (mem. op.); *Holt v. Lone Star Gas Co.*, 921 S.W.2d 301, 304 (Tex. App.—Fort Worth 1996, no writ) (op. on reh'g).

and not allowing discovery as to records of professors university-wide because professor was not "similarly situated" to professors outside of his department); *Smith v. Wal–Mart Stores*, 891 F.2d 1177, 1180 (5th Cir. 1990) (holding in order for female employee's claim of disparate treatment to succeed, she must have shown that male employee and she had been similarly situated; female employee must have shown that the misconduct for which she was discharged was "nearly identical" to that engaged in by a male employee whom the company retained); *Ysleta ISD*, 177 S.W.3d at 917 (holding employees are "similarly situated" if their circumstances are comparable in all material respects, including similar standards, supervisors, and conduct); *Hertz Equip. Rental Corp. v. Barousse*, 365 S.W.3d 46, 56 (Tex. App.—Houston [1st Dist.] 2011, pet. denied) (holding employees similarly situated when they had same job duties); *In re Greyhound Lines*, 138 S.W.3d at 22 (holding employees supervised by same supervisor as plaintiff similarly situated to plaintiff); *In re i2 Techs.*, 1998 WL 887558, at *2 (holding employee not entitled to company-wide discovery of all females at company because employee was not similarly situated to all females at company).

Additionally, numerous federal courts have held that discovery in individual employment discrimination cases should be limited to the "work unit" of the decision maker whose actions are alleged to be discriminatory. *See, e.g.*, *Sallis v. Univ. of Minn.*, 408 F.3d 470, 478 (8th Cir. 2005) (holding district court properly limited plaintiff's discovery request regarding prior discrimination complaints to complaints filed in plaintiff's specific department, where "his allegations of discrimination focus[ed] on

the behavior of the supervisors there"); *Balderston v. Fairbanks Morse Engine Div. of Coltec Indus.*, 328 F.3d 309, 320 (7th Cir. 2003) (holding plaintiff not entitled to discovery of company-wide personnel files on all who had been terminated, laid off, or who had retired and that district court properly limited discovery to the relevant corporate department of "similarly situated" employees, time period, and decisionmakers); *Walker v. Prudential Prop. & Cas. Ins. Co.*, 286 F.3d 1270, 1280 (11th Cir. 2002) (holding it was proper to deny plaintiff discovery about settlement agreements entered in other sex discrimination suits against employer because agreements resolved claims against managers whose discriminatory animus was not at issue); *Scales v. J.C. Bradford & Co.*, 925 F.2d 901, 906 (6th Cir. 1991) (limiting discovery of employer's payroll records to employees in same department in which plaintiff-employee worked); *Marshall v. Westinghouse Elec. Corp.*, 576 F.2d 588, 592 (5th Cir. 1978) (limiting discovery in Title VII case to "employing unit" or "work unit"); *EEOC v. Packard Elec. Div., Gen. Motors Corp.*, 569 F.2d 315, 316–17 (5th Cir. 1978) (limiting discovery in race and sex discrimination case to department where employees worked); *Choate v. Potter*, No. 3-06-CV-2146-L, 2008 WL 906784, at *2 n.1 (N.D. Tex. Apr. 3, 2008) (mem.) (rejecting argument that plaintiff was entitled to discovery pertaining to employees hired for positions to which plaintiff did not apply).

However, discovery may be expanded beyond a plaintiff's employing unit if the plaintiff can show the requested information is "particularly cogent" (*Owens v. Sprint/United Mgmt. Co.*, 221 F.R.D. 649, 654 (D. Kan. 2004)) to the matter or can

show a "particularized need and likely relevance that would require moving discovery beyond the natural focus of the inquiry." *Earley v. Champion Int'l Corp.*, 907 F.2d 1077, 1084–85 (11th Cir. 1990); *compare Duke*, 729 F.2d at 997 (holding female university professor plaintiff entitled to discovery of records of professors university-wide in sex discrimination lawsuit when university-wide survey indicated that women were paid less than their male counterparts), *with Marshall*, 576 F.2d at 592 (holding that because termination decision was made at the local level, discovery on intent may be limited to the employing unit and the vague possibility that loose and sweeping discovery might turn up something suggesting discrimination does not show particularized need and likely relevance that would require moving discovery beyond the employing unit).

TCU complains that the trial court's August 18 order compels discovery outside of firmly established precedent that allows discovery in individual discrimination cases only from the decision maker and work unit at issue and not from the entire organization.[4] Moreover, TCU points out that it has already provided Avitia with extensive discovery pertaining to his discharge and to operations within the Registrar's Office during the timeframe at issue in Avitia's lawsuit. Specifically, TCU produced Avitia's supervisor, Registrar Mary Kincannon, for deposition. TCU further provided Avitia with sworn information on the names, job titles, dates of

---

[4]In the handwritten portion of the trial court's August 18 order, the trial court refers to the documents that TCU is ordered to produce by number. The numbers refer to the categories of matters to be produced as set out in Plaintiff's Amended Notice of Intent to Take Oral Deposition of an Organizational Representative of TCU and Subpoena Duces Tecum.

employment, and national origin of all full-time employees in the Registrar's Office from 2015 to the present date. TCU also provided the job description, hiring documents, and performance appraisals of Audrey Crist, the employee in the Registrar's Office whose job is designated exempt and who Avitia complains was treated differently than him because she is white. Additionally, TCU provided Avitia with Kincannon's affidavit as well as the affidavit of Tiffany Wendt, Avitia's supervisor in the Registrar's Office prior to Kincannon.

In connection with Avitia's allegation of retaliation for reporting discrimination, TCU provided him with the affidavits of Yohna Chambers, TCU's Vice Chancellor and Chief Human Resources Officer, and Lara Ellison, Chambers's subordinate. Both testified in detail about TCU's actions and investigation in response to Avitia's report of alleged discrimination. TCU also complied with Avitia's request to depose Dr. Darron Turner, TCU's Chief Inclusion Officer and Title IX Coordinator.

Avitia, however, argues that the scope of discovery in this case should extend beyond the discovery he has already received or conducted and include all TCU employees' discrimination complaints because those complaints are relevant to his claim of discrimination. His reasoning is that "[e]vidence of other instances of discrimination is also relevant concerning [TCU's] general policy and practice with

14

respect to minority employment and may also be relevant to showing pretext."[5] Additionally, Avitia claims "[a]ny evidence of [TCU's] overall employment practices may be essential to [his] prima facie case."

Avitia also claims that even if discovery is limited to instances of discrimination in the Registrar's Office, discovery should include information regarding Dr. Darron Turner's policies and customs of handling complaints of illegal discrimination. Avitia claims that evidence of Dr. Turner's practice of receiving and handling complaints of discrimination is relevant to his retaliation claim and "how it was handled (or discouraged) by Dr. Turner and TCU."

We do not find that Avitia's arguments provide a basis to expand the scope of discovery to matters outside of the Registrar's Office. Avitia's claim, that TCU discriminated against him personally by failing to change his employment designation from nonexempt to exempt, is an individual claim and not a class action claim of institutional racism. Avitia does not complain of a university-wide policy of discrimination against all Hispanics, nor does he claim he is a representative of all

---

[5]Avitia also claims that other complaints of race and national origin and retaliation by TCU employees are relevant to his request for punitive damages. However, Avitia did not request punitive damages. Moreover, even if he did, Avitia would only be entitled to punitive damages if he demonstrated that his supervisors in the Registrar's Office acted in a discriminatory practice with malice or with reckless indifference to his state-protected rights. Tex. Lab. Code Ann. § 21.2585(b); *Shear Cuts, Inc. v. Littlejohn*, 141 S.W.3d 264, 273 (Tex. App.—Fort Worth 2004, no pet.) (restricting analysis of punitive damages claim to supervisor at franchise location where plaintiff was employed). Accordingly, a claim of punitive damages would not extend discovery beyond the Registrar's Office.

Hispanic university-wide employees. Instead, Avitia alleges that two specific employees in the Registrar's Office, Registrar Mary Kincannon and Tiffany Wendt, discriminated against him personally.[6] Because Avitia's claims relate solely to acts of discrimination made against him while he worked in the Registrar's Office, his claim is an individual claim. *See In re Greyhound Lines*, 138 S.W.3d at 21 (holding plaintiff's claim an individual claim because she did not allege a company-wide policy of discrimination and therefore discovery was limited to terminal where plaintiff worked and to employees similarly situated). Accordingly, Avitia's discovery of information is limited to his "work unit" and to employees "similarly situated" to Avitia—those employees that work in the Registrar's Office and have similar job duties. *See, e.g., Wallace*, 271 F.3d at 222; *Rubinstein*, 218 F.3d at 398; *Smith*, 891 F.2d at 1180; *Ysleta ISD*, 177 S.W.3d at 917; *Hertz Equip. Rental Corp.*, 365 S.W.3d at 56; *In re Greyhound Lines*, 138 S.W.3d at 22; *In re i2 Techs.*, 1998 WL 887558, at \*2. And according to Avitia, only one Registrar's Office employee had similar job duties to his—Audrey Crist.[7]

---

[6]In his response to TCU asking him to "identify each employee who you claim harassed, discriminated against, retaliated against, or mistreated you," Avitia responded, "Tiffany Wendt discriminated against Plaintiff by not allowing exempt status and not allowing additional work hours . . . [.] Kincannon discriminated against Plaintiff by not allowing exempt status and not allowing additional hours of work . . . . Those involved in Plaintiff's termination were guilty of discrimination and retaliation . . . ."

[7]When Avitia was asked to identify each similarly situated co-worker, Avitia answered:

16

In requesting discovery of university-wide discrimination complaints, Avitia conflates discovery's scope in actions involving one employee with evidence admissible in class actions or company-wide policy suits. Avitia's discovery request is akin to that in *Texaco*, 898 S.W.2d at 814. In *Texaco*, the plaintiff wanted documents to show Texaco's "corporate 'state of mind'" about safety. *Id.* The *Texaco* court held that because the plaintiff complained of injuries at one plant and not the company as a whole, his request was an improper fishing expedition. *Id.* As in *Texaco*, Avitia is attempting to "dredge the lake in hopes of finding a fish." *Id.* at 815; *see also Dillard Dep't Stores, Inc. v. Hall*, 909 S.W.2d 491, 492 (Tex. 1995) (orig. proceeding) (seeking all company records on claims alleging false arrest, civil rights violation, or excessive force in hope of finding evidence to support race discrimination claim not proper discovery).

As to Avitia's claim that he needs to obtain information regarding how Dr. Turner handled discrimination complaints based on race or national origin made by others, not in his department, such a request is improper. Avitia has not shown that such other employees are "similarly situated" to him and were employed in his

---

Audrey Crist was given exempt status in 2014. Ms. Crist performed the same type of job functions with athletic students. The only difference in their jobs was that she dealt with the athletic students['] benefits. She did not have to meet with the students, parents, etc. She only met with TCU officials.

17

"work unit."[8] *See, e.g.*, *Wallace*, 271 F.3d at 222; *Rubinstein*, 218 F.3d at 398; *Smith*, 891 F.2d at 1180; *Ysleta ISD*, 177 S.W.3d at 917; *Hertz Equip. Rental Corp.*, 365 S.W.3d at 56; *In re Greyhound Lines*, 138 S.W.3d at 22; *In re i2 Techs.*, 1998 WL 887558, at *2. Moreover, Dr. Turner testified that he was not consulted or involved in the decision to discharge Avitia; Registrar Kincannon made the decision to fire Avitia.[9] Dr. Turner had nothing to do with the decision to fire Avitia. Accordingly, we fail to see how discovery regarding Dr. Turner's process of handling other employees' discrimination claims is probative of Avitia's claim that Registrar Mary Kincannon and Tiffany Wendt discriminated against him based on his race or national origin.[10]

---

[8]To the extent Avitia is arguing that he needs to conduct discovery to obtain information regarding how Dr. Turner handled *his* complaints of discrimination and retaliation, Avitia has already deposed Dr. Turner on that subject. During his deposition, Dr. Turner testified that he passed both of Avitia's complaints to TCU's Human Resources Department to investigate and that he did not participate in the investigation in any way. And TCU provided Avitia with discovery detailing how his complaints were handled and investigated by Human Resources; TCU provided Avitia with affidavits from Yohna Chambers, TCU's Vice Chancellor and Chief Human Resources Officer, and Lara Ellison, Chambers's subordinate. Both testified in detail regarding TCU's actions and investigation in response to Avitia's reports of discrimination and retaliation. Because Avitia has already obtained discovery regarding how his discrimination complaints were handled by TCU, he is not entitled to conduct further discovery on this subject. *See* Tex. R. Civ. P. 192.4(a).

[9]Moreover, even if Dr. Turner had approved Kincannon's decision to fire Avitia, which he did not, such action would be insufficient to broaden discovery to employees outside of Avitia's "work unit." *See Rubinstein*, 218 F.3d at 397–99.

[10]As to Avitia's claim that Dr. Turner tried to discourage him from filing his complaints, Dr. Turner was asked about that allegation during his deposition and stated that he never attempted to discourage Avitia from filing either his

18

*See* Tex. R. Civ. P. 192.3(a); *In re Nat'l Lloyds Ins. Co.*, 532 S.W.3d at 808 (holding only relevant evidence is discoverable).

Although the scope of Avitia's discovery could have been expanded to employees, departments, reports, and documents outside of the Registrar's Office if Avitia had shown that such information was particularly "cogent" to his employment claim or if he had shown a "more particularized need" and "relevance" for the broader requested information"; Avitia has failed to make such a showing. *See, e.g.*, *Marshall*, 576 F.2d at 592; *Owens*, 221 F.R.D. at 654. In sum, we do not believe that Avitia is entitled to extend discovery beyond his work unit and beyond those employees in the Registrar's Office similarly situated to him—employee Audrey Crist. Accordingly, the trial court abused its discretion in ordering TCU to produce overly broad and irrelevant discovery. *Dillard Dep't Stores*, 909 S.W.2d at 492 (holding that discovery order compelling overly broad discovery outside the bounds of proper discovery is an abuse of discretion (citing *Texaco*, 898 S.W.2d at 815)). Moreover, because the trial court ordered TCU to produce overly broad discovery, it has no adequate remedy at law. *K Mart Corp. v. Sanderson*, 937 S.W.2d 429, 431–32 (Tex. 1996) (orig. proceeding) (defendant had no adequate remedy by appeal from overbroad discovery requests and was therefore entitled to relief by mandamus).

---

discrimination or retaliation complaint. And it is clear that Avitia was not thwarted from filing a complaint as evidenced by the two complaints that he filed.

19

## VI. <u>Conclusion</u>

Having determined that the trial court abused its discretion by compelling TCU to answer interrogatories, produce documents, and provide testimony on subject matters that do not pertain to the Registrar's Office and to employees in the Registrar's Office similarly situated to Avitia, and also having determined that TCU has no adequate remedy at law, we conditionally grant TCU's petition for writ of mandamus pursuant to Texas Rule of Appellate Procedure 52.8(c).

We direct the trial court to vacate all paragraphs and handwritten entries in its August 18 order that compel TCU to produce any discovery that does not pertain to the Registrar's Office and to similarly situated employees in the Registrar's Office. Because we are confident that the trial court will comply with this directive, the writ will issue only if the trial court fails to do so. Our disposition of this original proceeding serves to lift the stay previously imposed by this court. *See* Tex. R. App. P. 52.10(b).

/s/ Dabney Bassel

Dabney Bassel
Justice

Delivered: January 14, 2021

20